Gary L. WILLIAMS, Jr., Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 39A04–0708–CR–481.

Court of Appeals of Indiana.

Aug. 6, 2008.

Alison T. Frazier, Madison, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Gary L. Williams, Jr. appeals his convictions and sentence on two counts of Dealing in Cocaine, as Class A felonies; one count of Possession of Cocaine, as a Class A felony; two counts of Possession of Cocaine, as Class C felonies; and one count of Possession of Marijuana, as a Class D felony. Williams raises eight issues for our review, which we restate as follows:

1. Whether Williams is entitled to the return of his bond premium.

2. Whether the trial court abused its discretion in denying Williams' motion to continue trial two days before trial was scheduled to begin.

3. Whether the court erred in not granting Williams' motion for a mistrial after a juror disclosed to the court that she had a friendly relationship with a witness.

4. Whether the court abused its discretion when it admitted evidence obtained from two drug buys between an informant for the State and Williams, as well as firearms and cash found in Williams' home, pursuant to a search warrant.

5. Whether the court improperly denied Williams' tendered jury instructions.

6. Whether the court erred in imposing consecutive sentences.

7. Whether the court denied Williams his Sixth Amendment rights as recognized in *Blakely v. Washington*, 542 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403] (2004).

8. Whether his sentence is inappropriate in light of the nature of his offenses and his character.

We affirm in part and reverse in part.

### FACTS AND PROCEDURAL HISTORY

On October 1, 2002, Indiana State Police ("ISP") officers arrested William Butters, a video rental store owner in Hanover. Detective Grant Martin informed Butters that Butters was facing at least eleven criminal charges related to dealing in cocaine. After further discussion, the officers informed Butters that he could serve as a confidential informant to "help [him]self and try to get out of this mess." Transcript at 213. Butters agreed.

Butters told the ISP officers that he had been purchasing drugs from Williams. The officers instructed Butters to arrange a drug buy with Williams, which Butters did via a recorded telephone call. Butters arranged to purchase an ounce of cocaine from Williams. Before meeting with Williams, the ISP officers searched Butters and his car, fitted him with a recording device, and supplied him with $1,250 in cash with serial numbers that had been recorded.

Butters drove directly from the police station to Williams' residence, followed by ISP officers. Williams let Butters into the home, where two other men were present. The ISP officers were able to maintain visual contact with the front of the home and received audio transmissions from inside the home, which they recorded. Williams retrieved the cocaine from a safe inside the home and, using a knife and hammer, chiseled off two ounces of cocaine for Butters. Although Butters only had cash to pay for one ounce, Williams "front[ed]" the second ounce to Butters so

they "wouldn't have to keep doing business so often." *Id.* at 227. Butters gave Williams the money Butters had received from the ISP officers, with the expectation that Butters would pay Williams for the second ounce of cocaine at a later date. Butters then left Williams' home.

Following the transaction, Butters immediately met with ISP officers. His car and person were again searched, the officers removed the recording device, and they confiscated the cocaine. Detective Martin then told Butters to meet with officers the next day to arrange another cocaine buy with Williams.

On October 2, Butters again met with ISP officers. His person and vehicle were searched and he was fitted with another recording device. Butters then arranged another meeting with Williams at Williams' residence, and, using $1,450 in cash given to him by the police, with recorded serial numbers, Butters paid for the "fronted" amount of cocaine. *Id.* at 255. Williams agreed to "front" Butters two more ounces of cocaine. *See id.* During the transaction, ISP officers maintained visual contact with the front of Williams' home and recorded the audio transmissions from the device attached to Butters.

After the second transaction was completed, Butters left Williams' home and met with police. Butters and his vehicle were searched, the recording device was removed, and the cocaine was confiscated. The ISP officers then instructed Butters to return to his home.

On October 3, at 5:00 a.m., ISP officers executed a search warrant for Williams' residence. During the search, the officers discovered several bags of marijuana and cocaine, and more than $20,000 in cash. Some of the cash, $320, was identified by the police as money provided to Butters. Various firearms were also discovered and seized. Williams and another person were arrested at the scene. The State charged Williams with nine counts.

On January 22, 2003, Williams posted a $100,000 appearance bond through American Surety Company ("ASC") after having paid a $10,000 premium. In June of 2003, ASC filed a petition for release of the bond alleging that Williams had violated the terms of his agreement with ASC. Specifically, ASC argued that Williams changed his address without notifying ASC and that Williams had been rearrested on a previous bond in another court. The court granted ASC's request in April of 2004 and, in June of that year, denied Williams' cross-motion for a return of the $10,000 premium.

Between October of 2002 and October of 2006, Williams was represented by six different trial lawyers. In October of 2006, the court appointed Williams' eventual trial counsel. On January 3, 2007, the court scheduled Williams' trial for April 11, 2007, expressly stating that "[n]o continuances will be granted." Appellant's App. at 300. Nonetheless, on March 26, 2007, Williams' trial counsel moved for a continuance, alleging, without specification, a need for more time to prepare an adequate defense. The court denied that motion. On April 9, 2007, two days before trial was scheduled to begin, Williams' counsel again moved for a continuance, specifically requesting more time to investigate whether "a Supervisor of the [ISP] Drug Enforcement Unit involved in this investigation has a background so dubious that the integrity of the entire investigation, and therefore the State's case against Mr. Williams, may be in question" ("April 9 Continuance Request"). *Id.* at 322. The court denied the motion.

On the first day of Williams' trial, Williams filed a motion to suppress all evidence from the two "controlled buys"

and all evidence seized during the execution of the search warrant. . *Id.* at 336. Williams also filed several motions in limine concerning the State's evidence. And Williams' counsel renewed his motion for a continuance. The trial court denied all of those motions. During the trial, Williams' counsel renewed his objections to the admission of the audio recordings from each buy, the firearms, and the cash seized from his home, but the court overruled those objections.

Butters testified at Williams' trial. Without objection, Butters described each of the two cocaine buys at Williams' house.[1] At the conclusion of Butters' testimony, one of the jurors submitted the following handwritten letter to the trial court:

> Your Honor,
>
> I apologize. I did not realize at the time, but I do know Bill (Butters). I haven't seen him in years. He was a family friend of my parents [and] used to bartend private parties for my parents, Jim [and] Nancy Sedam. I was a patron of his video store [and] was on a friendly basis w/him.
>
> Mrs. Staser

*Id.* at 361. Upon receiving the juror's letter, the court questioned the juror in the presence of counsel and outside the presence of the other jurors. During that questioning, the following exchange took place:

> D.J. MOTE [for the State]: Is there anything about your prior relationship with Mr. Butters that's going to make you believe him more or less?
>
> JUROR: I'm afraid that there is. I really liked Bill. You know, he's always just very, very friendly to me and to my family.
>
> D.J. MOTE: Do you believe that you could follow the Court's instruction if the Court instructed you that you may not consider things outside this courtroom, and that is you may not consider him in your decision on whether or not to believe … him based on your friendship alone? Would you be able to follow the Court's instruction?
>
> JUROR: I believe so.
>
> D.J. MOTE: Can you follow the Court's instruction and remain fair and impartial to the State and also to the defense?
>
> JUROR: I believe so.
>
> D.J. MOTE: Can you give this man [Williams] a fair shake?
>
> JUROR: Sure.
>
> D.J. MOTE: And will you let this, the fact that you know Mr. Butters, get in the way of giving this man a fair shake?
>
> JUROR: No, I don't believe so.
>
> D.J. MOTE: Well, the Court's going to instruct you on that. Can you follow the Court's instructions?
>
> JUROR: Sure.
>
> \* \* \*
>
> D.J. MOTE: If the Judge instructed you not to discuss what we've talked about here in this room with your fellow jurors … back in deliberations, if he gave you a specific instruction not to talk about this, would you be able to follow the Court's instruction?
>
> JUROR: Oh, certainly.

Transcript at 274–75, 277–78. Following that discussion, Williams moved for a mistrial. Instead, however, the court ordered the juror to serve as the alternate juror.

---

1. For clarification, Williams' attorney objected only to the admission of the audio recordings of each of the two cocaine buys. Williams' attorney did not object to Butters' testimony, nor did he object to the audio recordings of Butters' telephone conversations with Williams in which the two set up the transactions at Williams' home.

The court then admonished all the jurors not to "ask any questions from anybody about why we switched [juror] number five with the alternate." *Id.* at 285.

On the second and third days of trial, Williams failed to appear. His counsel moved for a continuance, which the trial court denied. A forensic scientist then testified that the substance obtained from Williams by Butters in the first drug buy was 55.37 grams of cocaine, that the substance obtained from the second buy consisted of 55.73 grams of cocaine, that the ISP officers had seized 95.55 grams of cocaine from Williams' home, and that the search of Williams' home also yielded approximately 1,577 grams (about 3.5 pounds) of marijuana.

At the conclusion of Williams' trial, Williams' counsel sought two jury instructions on the definition and procedures of a "controlled buy." Appellant's App. at 362A–362B. Williams' counsel also tendered several instructions requesting the jury not to speculate about or draw inferences from Williams' absence on the second and third days of the trial. The court refused those tendered instructions, and the jury found Williams guilty on two counts of dealing in cocaine, as Class A felonies; one count of possession of cocaine, as a Class A felony; two counts of possession of cocaine, as Class C felonies; and one count of possession of marijuana, as a Class D felony.

On May 16, 2007, the court held a sentencing hearing. On June 8, the court issued its sentencing order, in which the court sentenced Williams as follows:

> The Court ... finds the following aggravating factors: (1) The Defendant has a lengthy criminal history including six (6) Prior Felony Convictions and Four (4) Prior Misdemeanor Convictions; (2) that the Defendant is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility; [ (]3) that imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crimes. The Court finds no mitigating factors. The Court[,] in weighing the aggravating factors and the mitigating factors, finds the aggravating factors justify the imposition of a sentence in excess of the advisory sentence.

*Id.* at 371. The court then sentenced Williams to thirty years for each conviction for dealing in cocaine, as a Class A felony; to four years on each conviction for possession of cocaine, as a Class C felony; to forty years on the Class A felony possession of cocaine conviction; and to three years on the Class D felony marijuana possession conviction. The court then ordered the two dealing in cocaine convictions and the two Class C felony possession of cocaine convictions to run concurrently to each other for a term of thirty years. And the court ordered that thirty-year term, the Class A felony cocaine possession sentence, and the Class D felony marijuana possession sentence to run consecutively, for an aggregate term of seventy-three years. This appeal ensued.

## DISCUSSION AND DECISION

### Overview

On appeal, Williams raises a number of challenges to both his conviction and his sentence. In particular, he asserts the following: (1) that he was entitled to the return of his bond premium; (2) that the trial court abused its discretion in denying his April 9 Continuance Request; (3) that the court erred in not granting his motion for a mistrial based on the juror's disclosure during trial; (4) that the court abused its discretion "when it admitted evidence of the two controlled buys over Mr.

Williams' objection," Appellant's Brief at 18, including evidence of the firearms and cash found in Williams' home; (5) that the court improperly denied his tendered jury instructions; (6) that the court erred in imposing consecutive sentences; (7) that the court denied him his Sixth Amendment *Blakely* rights; and (8) that his sentence is inappropriate in light of the nature of his offenses and his character. We address each argument in turn.

### Issue One: Bond Premium

█ Williams first asserts that he is entitled to have his $10,000 bond premium remitted to him.[2] Williams' complaint on this issue is based on his bail contract with ASC, but he has not filed a civil action against ASC, nor has Williams served ASC with his appellant's brief. Rather, Williams attempts to bootstrap his civil contract action against ASC into his criminal appeal. We recognize that, usually, "[a] 'bond in a criminal action is in the nature of a contract between government on the one side and the defendant and his surety on the other.'" *Amwest Surety Ins. Co. v. State*, 750 N.E.2d 865, 868 (Ind.Ct.App.2001). But, unlike the facts of *Amwest*, here there are no disputed funds being held by the trial court clerk. Rather, the disputed funds are being held by ASC. Thus, any interest the State may have had in the criminal bond—i.e., the retention of a bond payment based on a failure to appear—is not at issue in this appeal. Accordingly, we hold that this issue is not properly before us.

---

2. Indiana Code Section 27–10–2–5(b) states:

A defendant shall be surrendered without the return of premium for bond if the defendant has been guilty of:
 (1) changing address without notifying the defendant's bail agent or surety;
 (2) concealing one's self;

### Issue Two: Continuance Request

█ Williams next asserts that the court erred in denying his April 9 Continuance Request. The determination of whether to grant a continuance lies within the sound discretion of the trial court when the motion is not based upon statutory grounds. *Warner v. State*, 773 N.E.2d 239, 247 (Ind.2002). There is a strong presumption that the trial court properly exercised its discretion. *Id.*

█ Here, Williams contends that a continuance was required for two reasons. First, his trial counsel was new to criminal trials and needed a continuance to "reach[ ] some level of comfort with the case." Appellant's Brief at 16. Second, Williams needed a continuance to further investigate "the questionable reputation of one of the [ISP] officers." *Id.* But Williams in no way indicates either how much time would have been required for his counsel to feel "comfortable," or what he thinks a further investigation into the ISP officer's "questionable reputation" would have revealed. *See Warner*, 773 N.E.2d at 247; Appellant's Brief at 16. Accordingly, we find no abuse of discretion. *See Warner*, 773 N.E.2d at 247 ("denial of [a] motion grounded upon sheer speculation that some benefit might flow is not arbitrary or abusive") (citing *Brewer v. State*, 275 Ind. 338, 368, 417 N.E.2d 889, 906 (1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982)).

### Issue Three: Motion for Mistrial

█ Williams argues that the trial court abused its discretion when it denied

---

(3) leaving the jurisdiction of the court without the permission of the defendant's bail agent or surety or the court; or
(4) violating the defendant's contract with the bail agent or surety in a way that does harm to the bail agent or the surety or violates the defendant's obligation to the court.

his motion for a mistrial after Juror Staser informed the court of a past friendship with Butters. But Williams acknowledges that "timely disclosure of a juror's casual relationship with a witness ..., coupled with an assertion that the juror will remain impartial, adequately protect[s] a defendant's right to an impartial jury." Appellant's Brief at 17 (quoting *McCants v. State*, 686 N.E.2d 1281, 1285 (Ind.1997)). Here, Juror Staser expressly acknowledged, when asked by the State, that she could "remain fair and impartial to the State and also to the defense" despite her past friendly relationship with Butters. Transcript at 275. As such, the court did not abuse its discretion in denying Williams' request for a mistrial.

## Issue Four: Evidence of Drug Transactions

Fourth, Williams maintains that the court abused its discretion "when it admitted evidence of the two controlled buys over Mr. Williams' objection." Appellant's Brief at 18. Notably, Williams does not specify the evidence that he asserts was erroneously admitted by the trial court. However, at trial, Williams objected only to the admission of the audio recordings of each buy, the firearms, and the cash. As Williams did not raise any other evidentiary objections relevant to the issues raised on appeal, any other assertion of error in the admission of evidence is waived. *See, e.g., Sisk v. State*, 736 N.E.2d 250, 251 (Ind.2000). Accordingly, we address only the admissibility of the audio recordings, the firearms, and the cash.

■ Our standard of review of a trial court's findings as to the admissibility of evidence is an abuse of discretion. *Speybroeck v. State*, 875 N.E.2d 813, 818 (Ind. Ct.App.2007). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Dawson v. State*, 786 N.E.2d 742, 745 (Ind.Ct.App. 2003), *trans. denied.*

■ The court did not abuse its discretion in admitting evidence of the audio recordings. Williams did not object to Butters' testimony, in which Butters substantially described each of the two drug buys with Williams. The audio recordings were merely cumulative to that testimony. As such, any error in their admission was harmless. *See, e.g., Witte v. Mundy*, 820 N.E.2d 128, 135–36 (Ind.2005).

■ Nor did the court abuse its discretion in admitting the guns and cash seized from Williams' home. Williams asserts that "any probative value [that] evidence had was outweighed by its prejudicial nature and was therefore inadmissible under Indiana Evidence Rule 403." Appellant's Brief at 19. We cannot agree.

It is true that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Ind. Evidence Rule 403. Here, the State introduced the evidence in question for its probative value of Williams' intent to deliver cocaine. Possession of weapons and substantial amounts of cash can add to the inference that a defendant intended to distribute illegal narcotics. *See, e.g., Hazzard v. State*, 642 N.E.2d 1368, 1370 (Ind. 1994) ("A reasonable trier of fact could have concluded beyond a reasonable doubt that an individual possessing a significant amount of cocaine ..., a substantial sum of cash, and a gun, intended to deliver the cocaine.").

■ And while evidence of firearms and substantial amounts of cash is undoubtedly prejudicial, the question of Evi-

dence Rule 403 is whether that prejudice is "unfair." Evid. R. 403. " 'Unfair prejudice' addresses the way in which the jury is expected to respond to the evidence; it looks to the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence 'to suggest decision on an improper basis....' " *Ingram v. State,* 715 N.E.2d 405, 407 (Ind.1999) (quoting 12 ROBERT LOWELL MILLER, INDIANA PRACTICE § 403.102 at 284 (1995) (footnotes omitted)). Williams presents no cogent argument as to how evidence of firearms and substantial amounts of cash seized from his residence in connection with a drug bust is unfairly prejudicial. *See Baer v. State,* 866 N.E.2d 752, 762–63 (Ind.2007) ("We have emphasized that the relevant inquiry is not merely whether the matter is prejudicial to the defendant's interests, but whether 'it is unfairly prejudicial.' " (quoting *Steward v. State,* 652 N.E.2d 490, 499 (Ind.1995))), *cert. denied,* —— U.S. ——, 128 S.Ct. 1869, 170 L.Ed.2d 750 (2008). Hence, the trial court did not abuse its discretion in admitting that evidence.

### Issue Five: Jury Instructions

 Williams next argues that the court erred in not giving his tendered instructions on the meaning and procedures of a "controlled buy" and regarding his absence from trial for two days. Appellant's Brief at 21–22. "The purpose of a jury instruction 'is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.' " *Dill v. State,* 741 N.E.2d 1230, 1232 (Ind.2001) (quoting *Chandler v. State,* 581 N.E.2d 1233, 1236 (Ind.1991)). Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. *Schmidt v. State,* 816 N.E.2d 925, 930 (Ind.Ct.App.2004),

*trans. denied.* Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. *Id.* The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. *Id.* at 930–31. Still, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Id.* at 933 (citing *Dill,* 741 N.E.2d at 1233).

Here, any error in the trial court's refusal of Williams' tendered jury instructions was harmless. Between Butters' testimony, all of the audio recordings, and the evidence seized from Williams' house pursuant to the search warrant, the evidence overwhelmingly supports Williams' convictions. In light of that evidence, we can say with complete confidence that a reasonable jury would have rendered guilty verdicts even had Williams' tendered instructions been given. *See id.* ("An instruction error will result in reversal when the reviewing court cannot say with complete confidence that a reasonable jury would have rendered a guilty verdict had the instruction not been given." (internal quotations omitted)). The court did not abuse its discretion in denying Williams' requests.

### Issue Six: Consecutive Sentences

 Sixth, Williams contends that the court abused its discretion in ordering him to serve consecutive sentences. The decision to impose consecutive sentences lies within the discretion of the trial court. *See Echols v. State,* 722 N.E.2d 805, 808 (Ind.2000). A trial court is required to state its reasons for imposing consecutive sentences or enhanced terms. *Id.* However, a trial court may rely on the same reasons to impose a maximum sentence and also impose consecutive sentences. *Id.*

Williams asserts that the crimes he committed arose from a single episode of criminal conduct, thereby rendering the court's order that he serve consecutive sentences an abuse of the court's discretion. It is not disputed that the law in effect at the time of Williams' October 2002 crimes is the law that applies to his sentencing. *See, e.g., Robertson v. State,* 871 N.E.2d 280, 286 (Ind.2007). Here, Indiana's consecutive sentencing statute in effect at the time of Williams' crimes stated, in relevant part:

(b) As used in this section, "episode of criminal conduct" means offenses or a connected series of offenses that are closely related in time, place, and circumstance.

(c) Except as provided in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances in IC 35–38–1–7.1(b) and IC 35–38–1–7.1(c) in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the *total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.*

Ind.Code § 35–50–1–2 (2002) (emphasis added). In determining whether multiple offenses constitute an episode of criminal conduct, the focus is on the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes." *Reed v. State,* 856 N.E.2d 1189, 1200 (Ind. 2006). "[A]dditional guidance on the question" can be obtained by considering "whether 'the alleged conduct was so closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to the details of the other charge.'" *Id.* (quoting *O'Connell v. State,* 742 N.E.2d 943, 950–51 (Ind.2001)).

Williams' offenses did not constitute an episode of criminal conduct. While the two drug buys occurred within twenty-four hours of each other and at the same location, they were, nonetheless, distinct arrangements for the sale of narcotics. Indeed, a complete recount of the first drug buy can be given without reference to the other, even though Butters made full payment for the first buy during the second buy. *See, e.g., Jones v. State,* 807 N.E.2d 58, 68 (Ind.Ct.App.2004), *trans. denied.* Accordingly, the court did not err in ordering Williams to serve consecutive sentences.

### Issue Seven: *Blakely*

Williams next maintains that the trial court imposed enhanced sentences in violation of his Sixth Amendment *Blakely* rights. *See Blakely,* 542 U.S. at 303–04, 124 S.Ct. 2531. As our Supreme Court explained:

We recently held that *Blakely* was applicable to Indiana's sentencing scheme because our presumptive term constituted the statutory maximum as defined in *Blakely. Smylie v. State,* 823 N.E.2d 679, 683 (Ind.2005). Consequently, we held that to enhance a sentence under Indiana's then existing system "the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury...." *Id.* at 686.

*Blakely* is not concerned, primarily, with what facts a judge uses to enhance a sentence, but with how those facts are

found. Under *Blakely*, a trial court in a determinate sentencing system such as Indiana's may enhance a sentence based only on those facts that are established in one of several ways: 1) as a fact of prior conviction; 2) by a jury beyond a reasonable doubt; 3) when admitted by a defendant; and 4) in the course of a guilty plea where the defendant has waived *Apprendi [v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),] rights and stipulated to certain facts or consented to judicial factfinding.

*Trusley v. State*, 829 N.E.2d 923, 925 (Ind. 2005). When a court has relied on valid and invalid aggravators, the standard of review is whether we can say with confidence that, after balancing the valid aggravators and mitigators, the sentence enhancement should be affirmed. *See id.* at 927 (balancing the valid aggravators and mitigators and stating "with confidence" that Trusley's sentence enhancement should be affirmed); *Walsman v. State*, 855 N.E.2d 645, 653 (Ind.Ct.App.2006).

■ Here, the trial court sentenced Williams as follows:

The Court . . . finds the following aggravating factors: (1) The Defendant has a lengthy criminal history including six (6) Prior Felony Convictions and Four (4) Prior Misdemeanor Convictions; (2) that the Defendant is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility; [ (]3) that imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crimes. The Court finds no mitigating factors. The Court[,] in weighing the aggravating factors and the mitigating factors, finds the aggravating factors justify the imposition of a sentence in excess of the advisory sentence.

*Id.* at 371. On the basis of those aggravators, the court enhanced one of Williams' Class A felony convictions above the presumptive thirty-year term to forty years, and it enhanced Williams' Class D felony conviction above the presumptive one and one-half years to the maximum term of three years. *See* I.C. §§ 35–50–2–4, 35–50–2–7.

We agree that the trial court violated Williams' *Blakely* rights when it found the second and third aggravators. *See Trusley*, 829 N.E.2d at 927 (holding "that Trusley was in need of incarceration [and] that the imposition of anything other than an enhanced sentence would depreciate the seriousness of the crime" could not be used to impose an enhanced sentence). However, the first aggravator, Williams' extensive criminal history, namely, his six prior felonies and four prior misdemeanors, was properly recognized and relied upon by the trial court. *See id.* at 925 (facts of prior convictions are appropriate for the trial court to consider in enhancing a sentence).

It is clear to us that Williams' extensive criminal history carried far more weight in the trial court's sentencing decision than the other two, invalid, aggravators. As we stated in *Walsman:*

[W]hether and to what extent a sentence should be enhanced turns on the weight of an individual's criminal history. This weight is measured by the number of prior convictions and their gravity, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on a defendant's culpability.

855 N.E.2d at 653. Here, the trial court emphasized Williams' prior convictions, which include fraud, receiving stolen property, theft, possession of marijuana, operating a vehicle while intoxicated, and battery on a child. In addition to his prior

convictions, Williams has been charged in twenty other offenses over twenty-five years, since he was thirteen years old. He has had three protective orders issued against him and numerous probation violations. In light of that criminal history, the trial court enhanced one of Williams' three Class A felony convictions by ten years, and it gave him the maximum sentence for the Class D felony conviction. The court did not enhance either of Williams' Class C felony convictions.

■ A single aggravator is sufficient to support an enhanced sentence. *Trusley*, 829 N.E.2d at 927. In light of the extensive weight of Williams' prior criminal history, we can say with confidence that the trial court's sentence enhancements should be affirmed. *See id.*

### Issue Eight: Inappropriateness of Sentence

■ Finally, Williams argues that his sentence is inappropriate in light of the nature of his offenses and his character. Indiana Appellate Rule 7(B) provides that this court "may review a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although Rule 7(B) does not require us to be "very deferential" to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind.Ct.App.2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

■ As an initial matter, we note that it would be within this court's discretion to determine that Williams has waived his request for this court to review his sentence under Appellate Rule 7(B). Williams' entire application of that rule to his case consists of the following paragraph:

> Finally, Mr. Williams' sentence is inappropriate in light of the nature of the offense and the character of the offender. The transactions were uneventful and there was no violence involved. While Mr. Williams did possess relatively large amounts of drugs, the legislature accounted for the fact of amount by making the offenses Class A felonies. Mr. Williams did nothing out of the ordinary to warrant a seventy-three-year sentence. The presumptive sentence is more appropriate.

Appellant's Brief at 25. In other words, the thrust of Williams' Rule 7(B) argument focuses only on the nature of his offenses. But revision of a sentence under Indiana Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character. *See* Ind. Appellate Rule 7(B); *Rutherford*, 866 N.E.2d at 873. Williams presents no cogent argument regarding the inappropriateness of his sentence in light of his character. *See* App. R. 46(A)(8)(a); *Ford v. State*, 718 N.E.2d 1104, 1107 n. 1 (Ind.1999) (holding that the defendant's "argument with respect to the review and revise provision of the constitution is waived for failure to state a cogent argument").

■ Nevertheless, we choose to exercise our authority to review and revise Williams' sentence guided by our Supreme Court's opinion in *Gregory v. State*, 644 N.E.2d 543 (Ind.1994). In *Gregory*, our Supreme Court stated as follows:

> As the result of a government sting operation, appellant Jeffrey Gregory was convicted of four counts of selling cocaine to the same police informant.

The court sentenced him to the presumptive term of thirty years on each count, to be served consecutively. Consecutive sentences are not appropriate when the State sponsors a series of virtually identical offenses.

* * *

In a case with similar facts, we held consecutive sentences manifestly unreasonable where the state sponsors a series of offenses in a sting operation. *Beno v. State* (1991), Ind., 581 N.E.2d 922. In *Beno*, the defendant was convicted of selling cocaine to a police informant on two occasions within a four day period. The buys were virtually identical, involving the same drug and the same informant. The trial court enhanced both sentences to fifty years and ordered them to run consecutively. We revised the sentence to two enhanced terms of fifty years, to run concurrently. *Id.* at 924.

As in *Beno*, Gregory sold the same drug to the same informant on several occasions over a short period of time. Presumably, the police could have set up any number of additional transactions, each time adding an additional count against Gregory. While the police may find it necessary to conduct a series of buys, the trial court should be leery of sentencing a defendant to consecutive terms for each count. We hold that on these facts, a sentence of 120 years was inappropriate.

644 N.E.2d at 544, 546.

Further, in *Jones v. State*, 807 N.E.2d 58 (Ind.Ct.App.2004), *trans. denied*, the defendant was convicted on the following charges: Count I, dealing in cocaine, as a Class A felony; Count II, dealing in cocaine, as a Class A felony; Count III, possession of cocaine with intent to deliver, as a Class A felony; Count IV, possession of cocaine, as a Class A felony; Count V, conspiracy to commit dealing in cocaine, as a Class A felony; Count VII, maintaining a common nuisance, as a Class D felony; and Count VIII, neglect of a dependent, as a Class D felony. 807 N.E.2d at 61. The Count I Dealing conviction arose from an October 16, 2002, drug buy between defendant Jones and witness Johnson. *Id.* at 70. That drug buy was not sponsored by the State, but was undertaken by Johnson of her own volition. *Id.* at 61–62. However, following that buy Johnson contacted police and became a confidential informant. *Id.* at 62. Then, under State supervision, Johnson returned to Jones' residence on October 17, 2002, and purchased additional cocaine. *Id.* The State then obtained a warrant for Jones' residence, where they found additional drugs, paraphernalia, and a firearm. *Id.* Jones' convictions on Counts II, III, IV, V, VII, and VIII each arose from evidence obtained by the State after the State sponsored the October 17, 2002, drug buy. *Id.* at 70. The trial court ordered Jones' sentences for all the convictions arising after the State became actively involved to run concurrently, but ordered those sentences to be served consecutive to the non-State sponsored October 16, 2002, drug deal. *Id.* On appeal, we held that Jones' sentence was not inappropriate.[3] *Id.*

Here, as in *Gregory*, *Beno*, and *Jones*, Williams' multiple convictions arose from two nearly-identical, State-sponsored drug transactions within a short period of time, as well as from evidence seized pursuant

---

**3.** We also held that *Gregory* did not require the trial court to order Jones' sentence on Count I—for the conviction that occurred before the State became actively involved—to run concurrent with the State-sponsored activities underlying Counts II, III, IV, V, VII, and VIII. *Jones*, 807 N.E.2d at 69–70.

to a search warrant that was procured solely as a result of those State-sponsored transactions. In each transaction, Williams sold the same drug, cocaine, to the same informant at the same location, and the transactions occurred within twenty-four hours of each other. And within twenty-four hours of the last transaction, the State searched Williams' house, pursuant to the warrant, seizing additional cocaine, along with marijuana.

■■■ While Williams' crimes were separate episodes of criminal conduct justifying multiple convictions, nonetheless, *Gregory* and *Jones* require that the sentences for each conviction arising from evidence seized after the State began sponsoring the criminal activity to run concurrently. The trial court here ordered the convictions relating directly to the two transactions to be served concurrently, but then ordered those sentences to be served consecutive to the cocaine and marijuana convictions arising from the evidence seized under the search warrant. While *Gregory* and *Jones* did not expressly address this issue, the clear import of those decisions— that the State may not "pile on" sentences by postponing prosecution in order to gather more evidence—applies equally to convictions arising from evidence gathered as a direct result of the State-sponsored criminal activity. Accordingly, we hold that ordering consecutive sentences is, on these facts, inappropriate.

Again, the trial court ordered Williams to serve seventy-three years, as follows: forty years on the Class A felony possession of cocaine conviction; thirty years for each of the two convictions for dealing in cocaine, as Class A felonies; four years on each of the two convictions for possession of cocaine, as Class C felonies; and three years on the Class D felony marijuana possession conviction. In light of *Gregory* and *Jones,* we revise Williams' sentence and order that each of his sentences run concurrent with each other, for an aggregate term of forty years.

### Conclusion

In sum, we hold that Williams' request to have the bond premium remitted to him by ASC is not properly before us. We also revise Williams' seventy-three year sentence to forty total years. We affirm the trial court on all other issues raised in this appeal.

Affirmed.

DARDEN, J., and BROWN, J., concur.