

FILED

Dec 10 2015, 8:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman, & Nix, LLP
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald L. Eckelbarger,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 10, 2015

Court of Appeals Case No.
90A02-1503-CR-188

Appeal from the Wells Circuit
Court

The Honorable Kenton W.
Kiracofe, Judge

Trial Court Cause No.
90C01-1406-FB-5

**Altice, Judge.**

**Case Summary**

[1] Following a jury trial, Ronald L. Eckelbarger was convicted of three counts of Dealing in Methamphetamine,[1] as Class B felonies, and one count of Possession of Chemical Reagents or Precursors with Intent to Manufacture a Controlled Substance,[2] a Class D felony. Eckelbarger was sentenced to an aggregate term of thirty-two years, with eight years suspended to probation. Eckelbarger presents three issues for our review:

> (1) Do Eckelbarger's convictions for three counts of Class B felony dealing in methamphetamine violate the State's prohibition against double jeopardy?

> (2) Did the trial court abuse its discretion by ordering consecutive sentences in excess of the maximum term permitted by Ind. Code § 35-50-1-2(c)?

> (3) Is Eckelbarger's sentence inappropriate in light of the nature of the offense and his character?

[2] We affirm.

## Facts & Procedural History

[3] In May of 2014, Rebecca Markley was on probation for two convictions of check deception when she tested positive for methamphetamine. In order to

---

[1] Ind. Code § 35-48-4-1.1(a)(1). Effective July 1, 2014, this offense was reclassified as a Level 5 felony. Because Eckelbarger committed these offenses prior to that date, they retain their prior classification as Class B felonies.

[2] I.C. § 35-48-4-14.5(e). Effective July 1, 2014, this offense was reclassified as a Level 6 felony. Because Eckelbarger committed this offense prior to that date, it retains its prior classification as a Class D felony.

avoid the repercussions of her probation violation, Markley agreed to act as a confidential informant for the DETECT Drug Task Force—a joint operation between Adams County and Wells County. Markley had been romantically involved with Eckelbarger for approximately two and a half years and identified him as her source for methamphetamine.

[4] On June 5, 2014, Markley met with two members of the DETECT Drug Task Force—Detective James Paxton of the Wells County Sheriff's Department and Detective Andrew Ellis of the Bluffton Police Department—and signed a confidential informant agreement in which Markley agreed to complete "a minimum of two (2) purchases of controlled substances, the type and amount to be determined by [Detective Paxton]." *State's Exhibit* 1. In exchange for her compliance with the terms of the agreement, the State agreed to dismiss her probation violation.

[5] On June 6, 2014, Markley contacted Eckelbarger and arranged to drop a box of pseudoephedrine pills off at his trailer in exchange for a portion of the methamphetamine that could be produced from it. That afternoon, Markley met with Detective Paxton, Detective Ellis, and other members of the DETECT Drug Task Force. The officers searched Markley's person and vehicle for contraband and outfitted her with a concealed audio recording/transmitting device. After providing Markley with a box of pseudoephedrine pills, the DETECT officers discreetly followed Markley's vehicle to Eckelbarger's trailer. Markley delivered the pseudoephedrine directly to Eckelbarger, and he immediately removed the pseudoephedrine pills from the blister packs and

began grinding them. Markley indicated that she would return after work to pick up the methamphetamine. Markley and the task force officers subsequently reconvened at their pre-determined meeting location, where Markley was once again subjected to a thorough search. Several hours later, Markley contacted Detective Paxton to inform him that she had completed her shift. As before, she met with the task force officers at the established meeting location where she was searched and equipped with a recording/transmitting device before she and the officers drove in separate vehicles to Eckelbarger's trailer. With the officers parked nearby and listening to the transaction via the transmitting device, Eckelbarger provided Markley with a plastic bag containing a grayish/white substance and explained that he did not know what had gone wrong with the cooking process to cause it to have an unusual color. Markley left Eckelbarger's trailer and provided Detective Paxton with the plastic bag Eckelbarger had given her. It was later determined that the grayish/white substance in the bag contained .77 grams of methamphetamine.

[6]     On June 13, 2014, the task force set up a second controlled buy with Markley. Markley again agreed to supply Eckelbarger with pseudoephedrine pills in exchange for methamphetamine. The task force officers followed the same procedure as during the prior controlled buy. This time, when Markley returned to Eckelbarger's trailer to pick up the finished product, there were several other people present, and Eckelbarger asked Markley if she wanted "to do a 'bump' real quick." *Appellant's Appendix* at 24. Markley declined and then went to retrieve a plastic bag containing a white, powdery substance from

Eckelbarger's nightstand upon his indication "that it was her stuff." *Id*. Again, Markley turned the bag containing the white, powdery substance over to Detective Paxton. Subsequent testing confirmed that the bag contained .84 grams of methamphetamine.

[7] On June 14, 2014, Detective Paxton, along with officers from the DETECT Drug Task Force and Indiana State Police Meth Suppression Team, obtained and executed a search warrant for Eckelbarger's trailer. During the search, officers seized numerous items and ingredients necessary for the one-pot method[3] of manufacturing methamphetamine, including homemade ammonia reaction vessels (*i.e.*, one pots); homemade hydrochloric acid gas (HCL generators); Crystal Drain Opener and Kleen-Out drain opener (*i.e.*, sodium hydroxide/lye); numerous instant cold packs (*i.e.*, ammonium nitrate); Liquid Fire and Liquid Lightning drain openers (*i.e.*, sulfuric acid); Coleman fuel (*i.e.*, organic solvent); salt; lithium battery casings; coffee filters; plastic funnels; Ziploc bags; vinyl tubing; and hypodermic needles. The officers also found a receipt in Eckelbarger's wallet that indicated he had attempted to purchase Sudafed on May 17, 2014, but had been blocked after the National Precursor Log Exchange (NPLEx) revealed that he had already purchased his annual limit of 61.2 grams of pseudoephedrine.

---

[3] At trial, Indiana State Police Trooper Lionel Smith described in significant detail the most commonly utilized procedure for manufacturing methamphetamine—the "one pot method"—which combines "regular household chemicals" in a two-step process. *Transcript* at 266.

[8] On June 16, 2014, the State charged Eckelbarger with two counts of dealing in methamphetamine by delivery, Class B felonies (Counts I and II). On June 19, 2014, the State filed additional charges of dealing in methamphetamine by manufacturing, a Class B felony (Count III) and possession of chemical reagents or precursors with intent to manufacture a controlled substance, a Class D felony (Count IV).

[9] A jury trial commenced on January 20, 2015. At the close of the evidence, the jury found Eckelbarger guilty on all four counts, and the trial court entered a judgment of conviction accordingly. The trial court held a sentencing hearing on March 11, 2015. The trial court sentenced Eckelbarger to sixteen years with four years suspended on each of Counts I, II, and III. As to Count IV, the trial court sentenced Eckelbarger to three years. The trial court ordered the sentences on Counts I and II to be served concurrent with one another and consecutive to the sentence on Count III. The sentence on Count IV was ordered to run concurrently with the sentence on Count III. Thus, the trial court sentenced Eckelbarger to an aggregate term of thirty-two years, with eight years suspended to probation. Eckelbarger now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

### Double Jeopardy

[10] Eckelbarger claims that his "two separate convictions for dealing in methamphetamine by manufacturing it and then delivering it" violate the

Double Jeopardy Clause of the Indiana Constitution.[4] Article 1, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." The Indiana Supreme Court has determined that two or more offenses constitute the same offense for double jeopardy purposes "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Frazier v. State*, 988 N.E.2d 1257, 1262 (Ind. Ct. App. 2013) (citing *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). "Whether convictions violate double jeopardy is a question of law which we review de novo." *Id.*

[11] In arguing that double jeopardy "prohibit[s] two separate convictions for manufacturing methamphetamine and delivering methamphetamine[,]" Eckelbarger relies on Indiana's continuing crime doctrine. *See Hines v. State*, 30 N.E.3d 1216, 1219 (Ind. 2015). As this court has previously stated, "the continuing crime doctrine reflects a category of Indiana's prohibition against double jeopardy." *Walker v. State*, 932 N.E.2d 733, 736 (Ind. Ct. App. 2010). The continuing crime doctrine provides that "actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to

---

[4] Eckelbarger also generally asserts that his conviction runs afoul of the Fifth Amendment to the United States Constitution, which specifies that "[n]o person shall . . . be subject for the same offen[s]e to be twice put in jeopardy of life or limb." None of the cases relied upon by Eckelbarger pertain to a claim under the United States Constitution. We therefore find Eckelbarger has waived his Fifth Amendment double jeopardy argument. *See* Ind. Appellate Rule 46(A)(8)(a).

constitute a single transaction." *Id.* at 735. Thus, in addition to precluding a defendant from being convicted "of two or more distinct chargeable crimes when they constitute the 'same offense[,]'" double jeopardy prohibits "convicting a defendant multiple times for the same continuous offense." *Id.* at 736-37.

[12] At the time Eckelbarger committed the instant offenses, I.C. § 35-48-4-1.1(a)(1) provided as follows:

> [a] person who . . . knowingly or intentionally:
> (A) manufactures;
> (B) finances the manufacture of;
> (C) delivers; or
> (D) finances the delivery of;
> methamphetamine, pure or adulterated[,] commits dealing in
> methamphetamine, a Class B felony.

In Counts I and II, the State alleged that Eckelbarger knowingly *delivered* methamphetamine to Markley in controlled drug purchases on June 6 and June 13, 2014, respectively. Count III charged that Eckelbarger knowingly *manufactured* methamphetamine on or about June 14, 2014. "Delivery" is statutorily defined as the "actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship." I.C. § 35-48-1-11. On the other hand, "[m]anufacture" refers to

> the production, preparation, propagation, compounding,
> conversion, or processing of a controlled substance, either
> directly or indirectly by extraction from substances of natural
> origin, independently by means of chemical synthesis, or by a

combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. . . .

I.C. § 35-48-1-18.

Eckelbarger concedes that the crime of dealing in methamphetamine "can be committed by separate acts of manufacturing and delivering methamphetamine[,]" and that here, "there are separate facts to establish the manufacturing and the delivery of methamphetamine." *Appellant's Brief* at 8. Nonetheless, Eckelbarger argues that "[t]he transactions in this case specifically called for Markley to provide a key ingredient, pseudoephedrine, to Eckelbarger in order to manufacture methamphetamine, which Markley could later retrieve." *Id*. at 9. According to Eckelbarger, "[t]he manufacture of methamphetamine was so compressed in terms of time, place, singleness of purpose and continuity with the delivery of methamphetamine that it did not constitute a second and distinct crime." *Id*. We disagree.

In order to prove that Eckelbarger delivered methamphetamine as charged in Counts I and II, the State presented evidence that on June 6 and 13, 2014, Eckelbarger provided Markley with 0.77 gram of methamphetamine and 0.84 gram of methamphetamine, respectively. Therefore, the crime of delivering methamphetamine was completed each time Eckelbarger transferred methamphetamine to Markley during the controlled buys.

In turn, in order to convict Eckelbarger of manufacturing methamphetamine, the State relied on the evidence that was seized from Eckelbarger's home on

June 14, 2014, which included numerous items commonly utilized in the manufacture of methamphetamine, including ammonia reaction vessels, HCL generators, cut-open instant cold packs, ammonium nitrate pellets, drain cleaners, organic solvents, stripped out lithium battery casings, soiled coffee filters, homemade funnels, and vinyl tubing stained with a white residue. Trooper Smith testified that they found neither an active methamphetamine lab nor any pseudoephedrine during the search of Eckelbarger's home. As such, he opined that the spent ammonia reaction vessels and HCL generators would have been used in the past to manufacture methamphetamine—"anywhere from hours to a month" prior to the execution of the warrant. *Transcript* at 315. *See Bulthuis v. State*, 17 N.E.3d 378, 387-88 (Ind. Ct. App. 2014) (sustaining a conviction for manufacturing methamphetamine where the police found items commonly used to manufacture methamphetamine even though there was no evidence of an active methamphetamine lab), *trans. denied*; *see also Vanzyll v. State*, 978 N.E.2d 511, 518 (Ind. Ct. App. 2012) (citing *Bush v. State*, 772 N.E.2d 1020, 1023 (Ind. Ct. App. 2002), *trans. denied*) (noting that a conviction for manufacturing methamphetamine does not require that manufacturing be completed or that there be actual product).

[16] Although Markley provided Eckelbarger with pseudoephedrine pills on June 6 and June 13, 2014, to use to manufacture methamphetamine which he subsequently delivered to her, the State did not rely on this evidence to prove that Eckelbarger solely manufactured methamphetamine on those particular dates. Rather, the State also presented evidence that between July 21, 2013,

and June 12, 2014, Eckelbarger purchased pseudoephedrine pills on thirty-eight separate occasions and was blocked by the NPLEx system on three occasions because he had already surpassed the annual, legal limit of 61.2 grams. Detective Ellis testified that "[a] normal person would not buy this [amount of pseudoephedrine] and it would indicate to me that he has manufactured methamphetamine." *Transcript* at 233. We therefore conclude that Eckelbarger's acts of delivering methamphetamine and manufacturing methamphetamine were not part of the same continuous offense. Eckelbarger's convictions do no run afoul of the State's prohibition against double jeopardy.

## Consecutive Sentences

[17] Eckelbarger argues that the trial court abused its discretion in ordering his sentence on Count II to run consecutively to the concurrent sentences imposed on Counts III and IV for an aggregate sentence of thirty-two years. He claims this violates I.C. 35-50-1-2(c), which provides that, except for statutory crimes of violence,

> the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions *arising out of an episode of criminal conduct* shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

*Id.* (emphasis added). In this case, Eckelbarger's most serious charge was a Class B felony and the advisory sentence for the next highest class of felony—a Class A felony—is thirty years. *See* I.C. § 35-50-2-4. Eckelbarger asserts that

"the trial court was limited to imposing a sentence of [thirty] years" because "all three counts were closely related in time, place, and circumstance and were part of a single episode of criminal conduct." *Appellant's Brief* at 10.

[18] An "episode of criminal conduct" refers to "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b). Whether multiple offenses "constitute a single episode of criminal conduct is a fact-intensive inquiry to be determined by the trial court." *Slone v. State*, 11 N.E.3d 969, 972 (Ind. Ct. App. 2014) (quoting *Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002)). In making this determination, "the focus is on the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes." *Williams v. State*, 891 N.E.2d 621, 631 (Ind. Ct. App. 2008) (quoting *Reed v. State*, 856 N.E.2d 1189, 1200 (Ind. 2006)). The test for determining whether offenses arise out of a single episode of criminal conduct is whether "a full account of each crime can be given without referring to the other offenses." *Reeves v. State*, 953 N.E.2d 665, 671 (Ind. Ct. App. 2011), *trans. denied*.

[19] Here, Eckelbarger's conviction for dealing in methamphetamine by delivery was not dependent on evidence that he also manufactured methamphetamine. This crime was committed simply by transferring possession of methamphetamine to Markley on June 13, 2014 (Count II). Likewise, Eckelbarger's conviction for dealing in methamphetamine by manufacturing (Count III) was proven by the discovery of numerous ingredients used in the production of methamphetamine without reference to Eckelbarger's delivery of

the drug to Markley. As we have already determined, the crimes were distinct in nature and were not part of a continuous transaction. Therefore, we conclude that Eckelbarger's crimes were not part of a single episode of criminal conduct. The trial court was not constrained to impose a sentence capped at the advisory sentence for a Class A felony.

## Inappropriate Sentence

[20] Eckelbarger claims that his thirty-two year sentence is inappropriate. It is well established that matters of sentencing reside within the discretion of the trial court, and "the trial court's judgment should receive considerable deference." *Hines*, 30 N.E.3d at 1225. Nevertheless, despite the fact that the trial court imposed a sentence that is authorized by statute, we may revise Eckelbarger's sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Ultimately, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Thus, "whether we regard a sentence as appropriate . . . turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. In making this determination, the relevant considerations are the length of the aggregate sentence and how it is to be served. *Id.* Eckelbarger bears the burden

of persuading our court that his sentence is inappropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).

[21] Eckelbarger was convicted of three Class B felonies and one Class D felony. For a Class B felony, the sentencing range is six to twenty years, and the advisory sentence is ten years; for a Class D felony, the sentencing range is six months to three years, with an advisory sentence of one and one-half years. I.C. §§ 35-50-2-5; -7(a). Eckelbarger was sentenced to sixteen years on each of the Class B felonies and three years on the Class D felony. The sentences for the two dealing convictions which arose out of the two controlled buys were ordered to be served concurrently. It was only the sentences for dealing by delivery and dealing by manufacturing that were ordered to be served consecutively. With the imposition of consecutive sentences for these distinct crimes, Eckelbarger received an aggregate sentence of thirty-two years with eight years suspended to probation.

[22] We begin with the nature of the offense. As noted by the trial court, Eckelbarger manufactured methamphetamine, which necessarily involves the use of toxic, corrosive, and volatile chemicals and the process of which is extremely dangerous, and he did so "in a trailer park where the homes are literally feet away from one another." *Transcript* at 368. In addition to manufacturing the drug without regard to the danger posed to others, Eckelbarger provided methamphetamine to Markley in exchange for pseudoephedrine during two separate controlled buys.

[23] With regard to the character of the offender, we note that Eckelbarger attempts to minimize his culpability by shifting the blame to Markley, suggesting that he manufactured methamphetamine for her only after she provided him with the essential ingredient of pseudoephedrine in order to set him up for a controlled buy. The NPLEx records belie this assertion in that they establish Eckelbarger was purchasing pseudoephedrine on a frequent basis long before Markley acted as a confidential informant. Further, Markley informed task force officers that Eckelbarger had been supplying her with methamphetamine for a substantial period of time.

[24] Eckelbarger also directs our attention to the fact that he was a member of the United States Marine Corps from 1969 through 1973, serving in Vietnam before receiving an honorable discharge. While his service to our country is certainly admirable, during his subsequent employment as a truck driver, Eckelbarger began using methamphetamine on a regular basis. Also, at age forty-three, Eckelbarger experimented with cocaine and used one gram per day for the next five years. Despite attending substance abuse treatment in 2001, 2012, and for one week while released on bond in the instant case, Eckelbarger admits that he continues to suffer from a serious drug addiction.

[25] Eckelbarger additionally notes that he is the father of three grown children, as well as a six-year-old, and a four-year-old. This fact, however, carries little weight as a positive attribute of his character considering that Eckelbarger's parental rights to his two youngest children were terminated because he failed to participate in the services recommended by the Department of Child

Services. Those children are now in the custody of Eckelbarger's adult daughter.

[26] In addition to the foregoing, perhaps the most telling of Eckelbarger's character is his criminal history. In addition to the numerous uncharged drug offenses mentioned above, Eckelbarger has a prior conviction for class B felony dealing in methamphetamine. Eckelbarger has also accumulated convictions for public intoxication, possession of marijuana, and battery resulting in bodily injury. As a result of his prior convictions, Eckelbarger has been ordered to complete community service, has been placed on probation and work release, and has served time in both jail and the Department of Correction. Eckelbarger has also previously had his probation revoked for failing a drug test. Neither his prior penalties nor his rehabilitation attempts in substance abuse facilities have been sufficient to deter Eckelbarger from committing additional crimes. This is further evidenced by the fact that less than three months after Eckelbarger was released on bond to await trial in the instant case, he was charged with a new offense, assisting a criminal as a Class A misdemeanor. As a result, his bond was revoked. We further note that Eckelbarger's own statement during his pre-sentence investigation interview that he "did [his] part to keep [his] friends['] habits going" (*Appellant's Confidential Appendix* at 303) gives credence to the trial court's statement that Eckelbarger was "a factor in [the] explosion and epidemic" of methamphetamine cases in Wells County. *Transcript* at 368.

[27] In light of the nature of the offense and particularly the character of the offender, which demonstrates quite clearly that Eckelbarger has no regard for

the laws of this state and has disdain for legal authority, we conclude that the sentence imposed by the trial court is not inappropriate.[5]

[28]    Judgment affirmed.


Brown, J., concurs.

Riley, J., concurs in part and dissents in part with separate opinion.

---

[5] The dissent, citing *Williams v. State*, 891 N.E.2d 621 (Ind. Ct. App. 2008) as support, would exercise this court's authority under Ind. Appellate Rule 7(B) to revise Eckelbarger's sentence such that the sentences imposed on Counts I and II would run concurrently with the sentences imposed on Counts III and IV. We understand the *Williams* court's stated concern that the State "may not 'pile on' sentences by postponing prosecution in order to gather more evidence." *Id.* at 635. We disagree, however, that this concern is implicated when the underlying crimes are wholly distinct, even where such crimes were discovered as part of state-sponsored activity. Here, the trial court ordered the sentences for the dealing convictions arising from the two controlled buys to run concurrently with each other but consecutively to the sentence imposed for the dealing by manufacturing conviction arising from evidence gathered during execution of a search warrant. In short, this is not a situation that gives rise to the concern that the State was seeking to "pile on" charges and resulting sentences.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ronald L. Eckelbarger,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>90A02-1503-CR-188 |

**Riley, Judge, concurring in part and dissenting in part.**

I concur with the majority's conclusion that Eckelbarger's conviction for multiple Counts of dealing in methamphetamine does not violate double jeopardy principles, and I further concur that the trial court was not constrained in its imposition of consecutive sentences amounting to thirty-two years because Eckelbarger's crimes were not part of a single episode of criminal conduct. However, I dissent with respect to the majority's determination that Eckelbarger's aggregate thirty-two-year sentence is appropriate.

[30] As the majority found, the serious nature of Eckelbarger's offenses and his lack of positive character attributes indicate that a sentence revision is not merited. Nevertheless, I note that in its argument regarding consecutive sentences, the State relies on *Williams v. State*, 891 N.E.2d 621 (Ind. Ct. App. 2008). In *Williams*, the defendant was convicted, in part, of two Counts of Class A felony dealing in cocaine and one Count of Class A felony cocaine possession following "two nearly-identical, State-sponsored drug transactions within a short period of time, as well as from evidence seized pursuant to a search warrant that was procured solely as a result of those State-sponsored transactions." *Id.* at 634-35. The controlled drug purchases in *Williams* occurred within twenty-four hours of each other, and the search warrant was executed within twenty-four hours of the second transaction. *Id.* at 635. As in the present case, the *Williams* court found that the defendant's "crimes were separate episodes of criminal conduct justifying multiple convictions." *Id.* Nonetheless, the *Williams* court concluded that the imposition of consecutive sentences (*i.e.*, the concurrent sentences for the two dealing charges arising from the controlled purchases were ordered to be served consecutively to the sentence for the possession charge arising from the execution of the warrant) was inappropriate. *Id.* The court reasoned that "the State may not 'pile on' sentences by postponing prosecution in order to gather more evidence . . . as a direct result of the State-sponsored criminal activity." *Id.*

[31] Analogous to *Williams*, Eckelbarger's charges for delivering methamphetamine arose from two, nearly-identical State-sponsored drug purchases that were

separated by a week. One day after the second transaction, the police executed a search warrant that was procured solely as the result of those State-sponsored drug purchases, the fruits of which led to Eckelbarger's conviction for manufacturing methamphetamine and possession of precursors with intent to manufacture. Therefore, as in *Williams*, I would elect to exercise this court's authority under Appellate Rule 7(B) and order that Eckelbarger's sentences on Counts I and II run concurrently with his sentences on Counts III and IV, for an aggregate term of sixteen years, with twelve years executed and four years suspended to probation. In all other respects, I would affirm.