Antoine JONES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A05–0306–CR–281.

Court of Appeals of Indiana.

April 27, 2004.

Transfer Denied July 23, 2004.

---

Steven Knecht, Vonderheide & Knecht, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The State charged Antoine Jones with a total of ten counts, and following a jury trial, he was convicted of the following crimes: Counts I and II, Dealing in Cocaine, both as Class A felonies; Count III, Possession of Cocaine With Intent to Deliver, as a Class A felony; Count IV, Possession of Cocaine, as a Class A felony; Count V, Conspiracy to Commit Dealing in Cocaine, as a Class A felony; Count VII, Maintaining a Common Nuisance, as a Class D felony; and County VIII, Neglect of a Dependent, as a Class D felony. The trial court sentenced Jones to a total term of sixty years, with five years suspended to probation. Jones now appeals and presents the following issues for review:

1. Whether the State presented sufficient evidence to sustain his convictions on Counts I, III, IV, and VII.

2. Whether Jones' convictions on Count III, Possession of Cocaine With Intent to Deliver, and Count IV, Possession of Cocaine, violate the actual evidence test of the Double Jeopardy Clause under Article I, Section 14 of the Indiana Constitution.

3. Whether Jones' crimes constitute an episode of criminal conduct.

4. Whether the imposition of consecutive sentences is inappropriate in light of the nature of his offenses and his character.

We affirm in part, reverse in part, and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

Johnny Lee Drake regularly purchased crack cocaine from Jones and was addicted to the drug in the Fall of 2002. After Drake had loaned his car to someone in exchange for crack cocaine, he contacted the Tippecanoe County Drug Task Force and inquired whether someone there could help him retrieve his car. In October 2002, Drake agreed to become a confidential informant. He informed the Drug Task Force that Jones, whom Drake referred to as "T," was "the source of crack cocaine in Tippecanoe County." He also told the Drug Task Force that he had purchased crack cocaine from Jones at Jones' residence at 418 S. 9th Street in Lafayette. On October 1, 2002, the Drug Task Force intended for Drake to complete a controlled buy from Jones. But because Jones was in jail at the time, Drake instead bought crack cocaine from Anthony Segal at 418 S. 9th Street.

On October 16, 2002, Lori Johnson, who was also addicted to crack cocaine and had purchased crack from Jones many times in the past, bought crack from Jones and Keyana Compton, another resident at 418 S. 9th Street. Johnson traded several per-

sonal items, including her computer, her son's PlayStation, her television, her car, and her mother's car, in exchange for crack. After she had consumed all the crack she purchased on October 16 and realized that she had "got[ten] her mother involved," she contacted a family friend who was a detective. Thereafter, like Drake, Johnson agreed to become a confidential informant for the Drug Task Force.

On October 17, 2002, Johnson went to Jones' residence to complete a controlled buy. When she learned that Jones was not there, Johnson gave the buy money to Compton in exchange for the keys to her mother's car. Johnson left Jones' residence and returned later. When Jones was still not at home, she left. Later that day, she sat in a vehicle with undercover police officers near Jones' residence and waited until Jones returned home. She then went into the house and purchased $100 worth of crack from Jones, approximately .55 grams. Johnson wore a wire during the buy, and the officers had an audiotape recording of the transaction. The officers then obtained a search warrant to search Jones' residence.

During the search, the officers found digital scales and several plastic baggies and baggie corners. The officers found approximately 1.75 grams of crack cocaine inside a plastic bag in Jones' bedroom. There were also bills in that bedroom with Jones' name on them. The officers discovered 43.75 grams of crack cocaine and a nine millimeter handgun with the serial number scratched off hidden in a bathtub. And the officer recovered many of Johnson's personal items that she had exchanged for crack. The officers also found a portion of the buy money in Jones' girlfriend's wallet.

The State charged Jones with two counts of dealing in cocaine, one count of

possession of cocaine with intent to deliver, one count of possession of cocaine, one count of conspiracy to commit dealing in cocaine, one count of possession of a handgun with obliterated identification marks, one count of maintaining a common nuisance, one count of neglect of a dependent, and one count of corrupt business influence. The State dismissed the corrupt business influence charge, and the jury found Jones guilty of all charges except the possession of a handgun charge.

Following a sentencing hearing, the trial court identified as mitigating "that imprisonment . . . will result in undue hardship on his dependents." The court identified two aggravating factors: Jones' history of criminal or delinquent activity and that he was on probation at the time he committed the instant crimes. The court then sentenced Jones to thirty years each on Counts I, II, III, IV, and V, and to three years on Counts VII and VIII. The court further ordered that he serve the sentences in Counts II, III,' IV, V, VII, and VIII concurrent with each other, but consecutive to the sentence in Count I, for a total of sixty years. The court also ordered that he serve five years of the total sentence on probation. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of the Evidence

Jones first asserts that the State failed to present sufficient evidence to sustain his convictions on Counts I, III, IV, and VII. Regarding Count I, he maintains that the State failed to prove that the substance he sold to Johnson on October 16, 2002 was crack cocaine. Regarding Counts III, IV, and VII, he contends that the State failed to prove that he had constructive possession over the items the officers recovered from the home when they executed the

search warrant. We address his arguments in turn.

When reviewing a conviction for sufficiency of the evidence, this court looks to the evidence most favorable to the State and all of the reasonable inferences to be drawn from such evidence. *Smalley v. State*, 732 N.E.2d 1231, 1234 (Ind.Ct.App. 2000). We will affirm unless there is no way a reasonable trier of fact could have found the defendant guilty. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but rather look to the evidence to determine whether there was substantive probative evidence to support the verdict. *See id.*

### A. Count I—Proof that Substance Alleged was Cocaine

■ Count I involved Jones' sale of drugs to Johnson on October 16, 2002. Jones asserts that his conviction on that count warrants reversal because Johnson immediately smoked the substance, and the State presented insufficient evidence to prove that the substance was, in fact, crack cocaine. We cannot agree.

As our supreme court stated in *Clifton v. State*, 499 N.E.2d 256, 258 (Ind.1986):

Even though the contraband is not recovered, the identity of a drug can be proven by circumstantial evidence. The type of circumstantial evidence usually contemplated is the testimony of someone experienced with the drug who identifies the substance. In fact, convictions supported by circumstantial evidence have relied on the testimony of past drug users who actually ingested the drug in question and identified it based on its effects. *To affirm a conviction based on this type of circumstantial evidence, the evidence must consist of the opinion testimony of someone sufficiently experienced with the drug.*
This does not mean that proof by circumstantial evidence is within the ex-

*clusive realm of experienced drug users; other circumstantial evidence may be sufficient.* Visual identification of the drug alone, though not per se insufficient, has never been held sufficient to support a conviction in Indiana. In those cases finding visual identification insufficient, the unidentified substance had no distinctive appearance.

(Citations omitted, emphases added); *see also Slettvet v. State*, 258 Ind. 312, 280 N.E.2d 806, 808 (1972) ("[W]hen the drugs themselves are not placed into evidence and there is no expert testimony based on a chemical analysis, then there must be testimony from someone sufficiently experienced with the drug indicating that the substance was indeed a dangerous drug.").

Here, Johnson testified that she had been addicted to crack for some time. When asked to tell the jury what crack is, she stated: "The devil, for one. Uh, all I know is [it is] cooked up powder cocaine. It turns into crack." She explained further that the high from crack does not last very long and that after you smoke crack, the effects are short-lived, and you crave more. She stated that it would take "15, 20 ... maybe 30 minutes" to go through $100 worth of crack. Johnson also testified about how crack is packaged for sale: "Just little individual pieces of crack in separate baggies."

Regarding October 16, Johnson stated that at that time her crack addiction was "out of control." She had been smoking crack the night prior, and during the day of October 16, she purchased more crack from Jones. She explained that she first used her own money to buy crack from Jones and Compton, and when she ran out of money, she started to exchange personal items for more crack. Johnson stated further that she received $100 worth of crack in exchange for her personal items,

which included her television, her son's PlayStation, and her mother's car. After Johnson had smoked the last of the crack she had received that day, she was "upset" and approached the Drug Task Force with hopes of retrieving her mother's car.

Compton also testified about the events of October 16. She stated that she knew Johnson because Johnson bought crack from her and Jones. She also stated that on October 16, Johnson brought several personal items to the house and traded those items to Jones in exchange for crack. Compton admitted that she gave Johnson $100 worth of crack when Johnson brought in her mother's car keys. Compton explained that she did this because Jones had to leave to go see his probation officer and he told her to sell Johnson crack if she came looking for it.

Jones asserts that because Johnson and Compton did not testify about either the distinct visual characteristics of the substance Johnson bought on October 16, or the substance's effects, their testimony is insufficient to prove that Johnson bought crack cocaine. In support, he relies primarily on this court's decision in *Copeland v. State*, 430 N.E.2d 393 (Ind.Ct.App.1982). In that case, we held that the visual identification of a confidential informant, who had used the drug dilaudid for many years, was insufficient, by itself, to prove that the substance sold during the controlled buy was a dangerous drug. *Id.* at 396. We found significant that the confidential informant "did not illuminate how he identified the drug, that is, whether the pills had any distinguishing markings or any other method to determine that the substance was dilaudid." *Id.* However, we also noted that we were not holding that a visual identification constitutes insufficient evidence *per se*, but that "there must be something distinctive from the appearance of the substance, such that it is not merely a fungible good." *Id.*, n. 1.

This case is distinguishable from *Copeland*. In that case, the only evidence to show that the substance the defendant had sold was a narcotic was the confidential informant's statement that he had purchased dilaudids, which are pills that contain the narcotic hydromorphone. *Id.* at 396. Here, however, the drug involved is not some nondescript pill, but rather crack cocaine. Johnson's testimony established that she can identify crack, knows how crack is produced, and knows its effects. Although she did not describe any details of the substance she purchased on October 16, nor did she describe the specific high she experienced, her testimony as a whole shows that she was high after she smoked the substance on October 16. Indeed, Johnson's description of the events leading up to and during the day of October 16 shows that she was constantly in search of, purchasing, using, and getting high from smoking crack. And Compton's statements regarding October 16 corroborate Johnson's testimony. In addition, we agree with the State that the fact that over forty-three grams of crack cocaine was confiscated from Jones' residence the following day is significant. *See Smalley*, 732 N.E.2d at 1235 (where defendant sold two separate bags of crack cocaine and only second bag had been tested, we determined that there was sufficient evidence to prove first bag contained cocaine where, in addition to other evidence, both first and second bags were sold from same source within short period of time and substance in second bag was cocaine). Based on all of the circumstantial evidence, it is reasonable for the jury to conclude that the substance Jones sold to Johnson on October 16, 2002, was crack cocaine.

### B. Counts III, IV and VII— Constructive Possession

Next, Jones maintains that his convictions on Counts III, IV, and VII require

reversal because the State failed to prove that he had constructive possession of the cocaine and other items recovered from his residence. Again, we cannot agree.

■ As our supreme court explained in *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999):

> In the absence of actual possession of drugs, our court has consistently held that constructive possession may support a conviction for a drug offense. In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband.

(Quotations and citations omitted). " 'Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found.' " *Allen v. State*, 798 N.E.2d 490, 501 (Ind.Ct.App.2003) (citation omitted).

■ To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband. *Goliday*, 708 N.E.2d at 6. This knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband. *Id.* (quotations and citations omitted). Among the recognized "additional circumstances" are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband is in plain view; and (6) location of the contraband is in close proximity to items owned by the defendant. *Person*

*v. State*, 661 N.E.2d 587, 590 (Ind.Ct.App. 1996), *trans. denied.*

■ Here, it is undisputed that Jones did not exercise exclusive control over the house at 418 S. 9th Street. Thus, to prove his intent to maintain dominion and control over the crack cocaine and other contraband, we must determine whether the State presented evidence of any of the additional circumstances discussed above. *See Person*, 661 N.E.2d at 590. We agree with the State that it presented evidence of two of those additional circumstances, namely, a drug manufacturing setting and the location of contraband in close proximity to items owned by the defendant.

In particular, when the police searched the residence, they discovered digital scales, plastic baggies in multiple rooms of the house, ties, and over forty-three grams of crack cocaine. Lafayette Police Detective Bryan Brown testified that baggie corners and ties are commonly used to package cocaine. The officers also found the money the officers had given to Johnson to use in the controlled buy on October 17, 2002. This evidence is sufficient to demonstrate a drug manufacturing setting. *See* Ind.Code § 35–48–1–18 (defining the manufacture of a controlled substance in relevant part as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin ... and includes any *packaging or repackaging of the substance*[.]") (emphasis added).

Further, Lafayette Police Officer Daniel Shumaker testified that during the search, the officers found crack cocaine inside a grocery bag located in the bedroom where Jones and his girlfriend Moneta Sanders stayed. In that same bedroom, the officers obtained a bill addressed to Jones and

Sanders and a receipt made out to Jones. Thus, items that belonged to Jones were found within close proximity to contraband, and we conclude that the State presented evidence of additional circumstances sufficient to prove that Jones had the intent to maintain dominion and control over the contraband.

Regarding the capability component, proof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the defendant's capability to maintain dominion and control over the contraband. *See Goliday,* 708 N.E.2d at 6. A defendant's possessory interest in the premises does not require actual ownership. *Allen,* 798 N.E.2d at 501. A house or apartment used as a residence is controlled by the person who lives in it, and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee. *Id.* (quotations and citation omitted).

In this case, Regina Friar, rental manager for Terry & Terry Properties, testified that Terry Properties owned and leased the three-bedroom duplex at 418 S. 9th Street. She stated further that Jones contacted her about the residence, looked at the duplex, and then told her that he and others would be living there. Jones' name is on the lease for the property, although he did not sign it. Jones also paid the deposit for the residence. In addition, Compton's testimony that she, Jones, Sanders, Anthony Regal, and several children lived in the duplex corroborates Friar's testimony. And again, personal items of Jones were found inside the residence, and Johnson identified the duplex as Jones' residence. Based on that evidence, the State proved that Jones had a possessory interest in the premises where the contraband was found and, thus, presented sufficient evidence that he had the

capability to maintain dominion and control over the contraband. *See Goliday,* 708 N.E.2d at 6. We conclude that the evidence supports the jury's conclusion that Jones exercised constructive possession over the crack cocaine found in his residence and, thus, his convictions on Counts III and IV must stand.

Still, Jones challenges his conviction on Count VII for maintaining a common nuisance and claims that because he did not sign the lease and was not a legal tenant at the duplex, he had no authority to "maintain" it. But Jones cites no authority for this assertion and, thus, he has waived that argument on appeal.

Nevertheless, to sustain a conviction for maintaining a common nuisance, the State had to prove that Jones knowingly or intentionally maintained a building, structure, vehicle, or other place that is used one or more times by persons to unlawfully use controlled substances, or for unlawfully manufacturing, keeping, offering for sale, selling, delivering, or financing the delivery of controlled substances. *See* Ind. Code § 35–48–4–13(b). While that statute does not define what it means to "maintain" a building or structure, we reject Jones' assertion that to be convicted under the statute, the person must own or legally possess the building or structure. Indeed, if the legislature had intended to require legal ownership under the statute, it would have written that requirement into the statute. Rather, we apply the plain, ordinary definition of "maintain," which means "[t]o keep up or carry on; continue: *maintain good relations.*" THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1084 (3d ed.1996) (italics original). Another definition is "[t]o keep in an existing state; preserve or retain: *maintain one's composure.*" *Id.* Finally, a third definition is "[t]o keep in a condition of good repair or efficiency: *maintain two cars.*"

*Id.* None of those common definitions encompass legal ownership, and we conclude that the evidence discussed above regarding constructive possession is sufficient to prove that Jones maintained the residence as required under Indiana Code Section 35–48–4–13(b). *See, e.g., Allen,* 798 N.E.2d at 501 (stating regardless of whether person is owner, tenant, or invitee, person controls house or apartment used as residence).

### Issue Two: Double Jeopardy

 Next, Jones contends, and the State concedes, that his convictions on Count III and IV, possession with intent to deliver and possession within 1,000 feet of school property respectively, violate the "actual evidence test" applied under Article I, Section 14 of the Indiana Constitution. "To show that two challenged offenses constitute the same offense under the actual evidence test, 'a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Spivey v. State,* 761 N.E.2d 831, 832 (Ind.2002). In this case, both Counts III and IV alleged that on October 17, 2002, Jones possessed more than three grams of cocaine. But only two quantities of cocaine were presented as evidence at trial, the 1.75 grams found in Jones' bedroom and the over 43 grams found inside the bathtub. Thus, we agree that to find Jones guilty of both Counts III and IV, the jury had to rely on the same 43 grams of cocaine to establish the essential element of cocaine possession under both offenses in violation of the actual evidence test.

Although the parties agree that a double jeopardy violation occurred, they dispute the appropriate remedy on remand. In particular, the State directs us to a footnote in a case in which our supreme court noted that some of the defendant's convictions may violate double jeopardy principles. *See Roop v. State,* 730 N.E.2d 1267, 1270 n. 2 (Ind.2000). But the defendant failed to raise the argument on appeal, and the court stated that "raising the issue would likely have had no practical effect because the sentences were ordered served concurrently." *Id.* Because the trial court ordered Jones to serve his sentences in Counts III and IV concurrently, the State claims that remand would serve no practical purpose. In the alternative, the State suggests that we remand with instructions to the trial court to "merge" the two convictions. Jones, on the other hand, asserts that we should remand with instructions to the trial court to vacate his conviction on Count IV. We agree with Jones.

 First, we do not consider the supreme court's statements in *Roop* binding because the court did not squarely address the issue presented here, namely, what is the appropriate remedy for a double jeopardy violation. Our supreme court does not decide important questions of law in footnotes. *See Molden v. State,* 750 N.E.2d 448, 451 (Ind.Ct.App.2001). The court was merely commenting on an issue not raised by the defendant, and the State reads far too much into the *Roop* footnote. A double jeopardy violation occurs when judgments of conviction are entered and cannot be remedied by the "practical effect" of concurrent sentences or by merger after conviction has been entered.

In addition, in *Kochersperger v. State,* 725 N.E.2d 918, 925–26 (Ind.Ct.App.2000), we explained that where the trial court had "merged" two offenses, imposed one sentence, but *entered judgment of conviction on both offenses,* one of the offenses must be vacated to comport with double jeopardy. Here, the trial court entered

judgment of conviction on both Count III and Count IV. Therefore, we remand with instructions to the trial court to vacate the judgment of conviction on Count IV.

### Issue Three: Episode of Criminal Conduct

 Jones also challenges the trial court's order that he serve his sentence in Count I consecutive to the sentences on the other counts for a total sentence of sixty years.[1] Specifically, he alleges that all of his crimes constitute a single episode of criminal conduct under Indiana Code Section 35–50–1–2(c). Under that statute, "except for crimes of violence, the total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." Jones claims that the maximum sentence allowed in this case under Indiana Code Section 35–50–1–2(c) is fifty-five years because that is the presumptive sentence for Murder, the felony one class higher than his Class A felony convictions. We cannot agree.

 An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind.Code § 35–50–1–2(b). In determining whether crimes amount to a single episode of criminal conduct, the issue is whether the alleged conduct was so closely related in time, place, and circumstances that a complete account of one charge cannot be related without referring to details of the other charge. *O'Connell v. State,* 742 N.E.2d 943, 950–51 (Ind.2001) (citations omitted).

Here, Jones was convicted of Count I based on his dealing cocaine to Johnson on October 16, 2002. All of the other counts were based on events that occurred the following day. We agree with the State that the events of October 16 and 17 are separate and distinct and that a complete account of Jones' sale of crack cocaine to Johnson on October 16 can be given without reference to the crimes that occurred on October 17. Therefore, the court did not err when it ordered Jones to serve his sentence in Count I consecutive to the other counts. *See Tedlock v. State,* 656 N.E.2d 273, 276 (Ind.Ct.App.1995) (holding where a complete account of a crime can be given without referring to the other offense, the offenses are not a single "episode of criminal conduct."). In addition, we need not examine whether the offenses that occurred on October 17 constitute a single episode of criminal conduct because the trial court ordered Jones to serve those sentences concurrently. *See* I.C. § 35–50–1–2(c) (addressing "total consecutive terms of imprisonment," not concurrent terms).

### Issue Four: Was Jones' Sentence Inappropriate?

Jones' final argument is that the trial court's imposition of consecutive terms is inappropriate in light of his character. He asks that we remand his sentence with instructions to the trial court to order that all of his sentences be served concurrently for a total term of thirty years. We reject Jones' invitation to second-guess the trial court in this case.

 Sentencing decisions lie within the sound discretion of the trial court, and we reverse only for an abuse of that discretion. *O'Neill v. State,* 719 N.E.2d 1243, 1244 (Ind.1999). The trial court's wide

---

1. All of Jones' remaining arguments relate to his sentence. For clarity, we address those arguments as separate issues.

discretion includes whether to increase the presumptive sentence, to impose consecutive sentences on multiple convictions, or both. *Singer v. State*, 674 N.E.2d 11, 13 (Ind.Ct.App.1996). A single aggravating factor is sufficient to support the imposition of enhanced or consecutive sentences. *Davies v. State*, 730 N.E.2d 726, 742 (Ind. Ct.App.2000), *trans. denied.* Under Indiana Appellate Rule 7(B), this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender.

Here, the trial court identified two aggravating factors: the defendant's criminal history and the fact that he was on probation when he committed the instant crimes. The court identified a single mitigating factor, namely, that imprisonment will result in undue hardship on his dependents. The Court found that the aggravators outweighed the mitigator. For each Class A felony, the court imposed the presumptive term of thirty years. *See* Ind.Code § 35–50–2–4. The court then imposed an enhanced term of three years for both of Jones' Class D felonies. *See* Ind.Code § 35–50–2–7. The court also ordered Jones to serve his sentence in Count I consecutive to the sentences imposed on all other counts, which were ordered served concurrent with each other.

Jones first asserts that his sentence is inappropriate because maximum sentences should be reserved for the very worst offenders and offenses, and he claims that he is not one of the worst offenders. However, the trial court did not impose the maximum possible sentence because it imposed the presumptive terms on all of Jones' Class A felonies. Thus, Jones' argument is misplaced.

Jones also complains that the imposition of consecutive sentences is inappropriate because he has only one prior felony conviction. But our review of the Pre–Sentence Investigation report shows that in addition to that felony conviction, he had two misdemeanor charges pending when that report was filed. In addition, he committed the instant offenses while he was on probation, which demonstrates a lack of respect for the law. Further, in evaluating Jones' character and the nature of the offenses, Compton testified at trial that Jones moved to Lafayette to sell crack cocaine. He sold crack out of his residence while many children were present. Based on all the circumstances, we cannot conclude that the imposition of consecutive sentences is inappropriate under Appellate Rule 7(B).

Finally, Jones directs us to *Beno v. State*, 581 N.E.2d 922 (Ind.1991), and *Gregory v. State*, 644 N.E.2d 543 (Ind. 1994), in support of his argument that consecutive sentences were improper. But both of those cases are distinguishable. In *Beno*, 581 N.E.2d at 924, our supreme court held that the sentence imposed was manifestly unreasonable where the trial court imposed the maximum possible sentence for each offense *and* ordered those sentences to be served consecutively. Again, the trial court in this case did not impose the maximum possible sentence on all counts, nor did the court order Jones to serve the sentences on all counts consecutively. Thus, Jones' reliance on that case is misplaced.

In *Gregory*, 644 N.E.2d at 544, the trial court sentenced the defendant to a total term of 120 years following four convictions for selling cocaine to the same police informant. Specifically, the court imposed the presumptive term of thirty years on each count and ordered each count to be served consecutively. *Id.* Our supreme court held that the imposition of consecutive sentences on all four counts was un-

reasonable and reduced the sentence to a total of fifty years. *Id.* at 546. Critical to the court's analysis in *Gregory* was that each of the four cocaine buys had been set up by police through use of the same confidential informant. *Id.* The court explained: "Presumably, the police could have set up any number of additional transactions, each time adding an additional count against Gregory." *Id.*

Here, however, not all of Jones' convictions were identical controlled drug buys involving the same confidential informant. Indeed, the dealing involved in Count I occurred on October 16, 2002, which was before Johnson had agreed to become a confidential informant. In addition, unlike the trial court in *Gregory,* which ordered all four Class A felonies to be served consecutively for a total of 120 years, the trial court in this case only ordered one of the Class A felonies (Count I) to be served consecutive to all other Class A felonies. We conclude that Jones' sentence is not inappropriate in light of the nature of the offenses and his character.

### CONCLUSION

We conclude that the State presented sufficient evidence to support Jones' convictions, that Jones' offenses do not constitute a single episode of criminal conduct, and that the trial court did not impose an inappropriate sentence. However, because Jones' convictions on Counts III and IV violate Article I, Section 14 of the Indiana Constitution, we remand with instructions to the trial court to vacate Jones' conviction on Count IV.

Affirmed in part, reversed in part, and remanded.

KIRSCH, C.J., and RILEY, J., concur.