**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DOUGLAS K. MAWHORR**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ADRIAN HARDY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1111-CR-1002 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable John M. Feick, Judge
Cause No. 18C04-1005-FB-15

**July 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Adrian L. Hardy appeals his convictions for Dealing in Cocaine,[1] a class B felony, and Maintaining a Common Nuisance,[2] a class D felony. Specifically, Hardy argues that an audio recording of a drug transaction was erroneously admitted into evidence, that trial counsel was ineffective for several reasons, and that the evidence was insufficient to support the convictions. Hardy also maintains that the sentencing order improperly designated the amount of time that he is to serve on his sentence for a prior conviction for which he was on probation at the time the instant offenses were alleged to have occurred.

We conclude that Hardy's trial counsel was not ineffective, and no other errors occurred. However, we remand this cause with instructions that the trial court correct a scrivener's error in the abstract of judgment to reflect the proper amount of time that Hardy is to serve.

The judgment of the trial court is affirmed and remanded.

FACTS

Mary Taylor and Hardy lived together in Muncie and were involved in a cocaine-selling operation. They conducted the business over the telephone and had moved into the residence on Powers Street sometime in December 2006.

In May 2010, the Muncie Police Department was investigating Taylor. The police observed both Hardy and Taylor at their residence on several occasions. On May 12,

---

[1] Ind. Code § 35-48-4-1(a)(1).

[2] I.C. § 35-48-4-13(b)(2).

2

arrangements were made for a confidential informant (C.I.) to attempt to buy drugs from Hardy and Taylor. That evening, Taylor received a telephone call from an individual who was interested in buying drugs. Although Taylor was not at the house, she sent the C.I. to their residence on Powers Street to meet Hardy.

Before the C.I. went to the residence, Muncie Police Officer Bret Elam searched the C.I. to ensure that he was not in possession of any weapons, drugs, or money. Officer Elam provided the C.I. with electronic recording equipment and $100 that had previously been photocopied. Officer Elam drove the C.I. to the West Powers Street residence and parked fifteen to twenty feet from the house. The C.I. entered the house and spoke with Hardy, who the C.I. referred to as "Big A." Tr. p. 285, 359-60, 400. Hardy then telephoned Taylor and asked how much "dope" he should give to the buyer. Id. at 358. The C.I. returned to Officer Elam's vehicle a short time later, carrying a piece of torn plastic that contained an off white, rock-like substance. Taylor did not receive any money from Hardy for the initial May 12 transaction.

Because Taylor did not participate in the transaction, arrangements were made for the C.I. to make another purchase that evening at the same address. Taylor returned home around 10:30 p.m. When Taylor arrived she received another phone call. Hardy was present at the time of the call, but left shortly thereafter. Taylor gave Hardy some money before he left. After Hardy was gone, the C.I. made a purchase from Taylor and the police obtained a search warrant for the house.

3

During the search, the police found a scale in the top dresser drawer, another was found in a laundry basket. Marijuana was found in the living room and the bedroom that Taylor and Hardy shared. It was determined that the scale found in the bedroom was used to weigh cocaine, and both Taylor and Hardy used this scale. Baggies found in Taylor and Hardy's bedroom were used for marijuana, and cash was seized from the bedroom mattress.

Hardy was arrested at a bar several hours after the police raided the house, and was found in possession of a "wad of money" in his right front pocket when he was searched. Tr. p. 392. Cash found in Hardy's possession included a ten dollar bill and two five dollar bills, which were bills that the police had provided to the C.I. to purchase cocaine.

Hardy was charged with the above offenses on May 17, 2010. Laboratory testing showed that the substance purchased by the C.I. from Hardy was, in fact, cocaine. Thereafter, Hardy filed a motion in limine, objecting to the testimonial nature of the audio recording and argued that it should be excluded because it was testimonial hearsay evidence and violated Hardy's right to cross-examination. The trial court denied the motion on its merits, but showed a standing objection to Hardy's motion.

During Hardy's jury trial that commenced on August 23, 2011, the State made a number of comments about government intervention for the public's safety with regard to drug dealing. Hardy's counsel did not object to such alleged improper voir dire.

4

The prosecutor also commented and inquired on numerous occasions that the C.I. could not testify because of safety concerns, and inquired of the jury, on several occasions, if they had concerns about the C.I. not testifying.

The prosecutor remarked in both his opening and closing statement about the world and local problems with drugs. The prosecutor also commented how drugs cause other crimes in the community and remarked that people who sell drugs need to be held accountable for their actions. Hardy's counsel also did not object on chain of custody grounds to a package that contained alleged cocaine that Hardy transferred to the C.I.

During the trial, an audio recording of the transaction between Hardy and the C.I. on May 12, 2010, was admitted into evidence as State's Exhibit 3. When the recording was admitted, the trial court instructed the jury that statements made by the C.I. on the recording were not being admitted into evidence to prove the "truth of the matter," but rather to provide the jury with the context of the conversation. Tr. p. 286. Hardy's counsel rested without calling any witnesses to testify who were present during the alleged transaction. Following the presentation of the evidence, Hardy was found guilty as charged.

At a sentencing hearing that was conducted on October 19, 2011, Hardy was ordered to concurrent terms of twelve years with one year suspended on Count I and to two years on Count II. The trial court also sentenced Hardy to serve his suspended portion of his sentence on another cause for which he was on probation when he committed the dealing in cocaine and maintaining a common nuisance offenses. The trial

5

court determined that Hardy had seventeen months of incarceration to serve consecutively to his sentence in this action. However, the abstract of judgment stated that Hardy was to serve seventeen <u>years</u> in the prior cause. Appellant's App. p. 111.

Hardy now appeals.

DISCUSSION AND DECISION

I. Admission of Audio Tape Into Evidence

Hardy claims that the trial court erred in admitting the audio tape of the drug transaction into evidence. Specifically, Hardy argues that the recording amounted to inadmissible hearsay evidence that violated his right to cross-examination.

In resolving this issue, we initially observe that the trial court has broad discretion in ruling on the admissibility of evidence and its rulings will be disturbed only where it is shown that the trial court abused its discretion. <u>Turner v. State</u>, 953 N.E.2d 1039, 1045 (Ind. 2011). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. <u>Id.</u>

In <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), the United States Supreme Court held that the Sixth Amendment bars "admission of testimonial statements of a witnesswho did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." <u>Id.</u> at 53-54. The first issue that must be addressed in reviewing a Sixth Amendment challenge to hearsay is whether the allegedly improperly admitted hearsay evidence was "testimonial." Only statements of this sort are subject to the Confrontation Clause of the Sixth Amendment. <u>Davis v.</u>

6

Washington, 547 U.S. 813, 821 (2006). And testimony is typically a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." Crawford, 541 U.S. at 51.

In this case, we cannot say that the audio recording was a solemn declaration or affirmation as defined by Crawford. Moreover, no statements were made in response to police questioning. In essence, Hardy is claiming that the recording violated his right to confrontation because the recording essentially "testified" that he was on the property. Appellant's Br. p. 19. However, Hardy's statements on the recording could not violate his right to confrontation because at least one court has established that a defendant has "no right to confront himself." United States v. Brown, 441 F.3d 1330, 1359 (11th Cir. 2006) (holding that a party's own statement that is offered against him is not testimonial). Even more compelling, the witnesses who identified Hardy's voice on the recording testified at trial. Thus, Hardy did have the opportunity to confront those witnesses. Tr. p. 359, 400.

We further note that the C.I.'s statements merely provided the context of what he and Hardy were discussing. The C.I.'s statements were not offered for the truth of what was said. Rather, we agree with the trial court's determination that the statements made by the C.I. on the recording were not being admitted into evidence to prove the truth of the matter asserted. Rather, they provided the jury with the context of the conversation. Id. at 286.

7

For all of these reasons, we conclude that the C.I.'s statements did not violate Hardy's right to confrontation. See Williams v. State, 930 N.E.2d 602, 609 (Ind. Ct. App. 2010) (holding that the C.I.'s recorded statements did not violate the defendant's right to confrontation because they merely provided context for the defendant's own statements). Therefore, Hardy's claim fails.

## II. Ineffective Assistance of Counsel

Hardy next claims that he is entitled to a new trial because his trial counsel was ineffective for several reasons. More specifically, Hardy argues that his trial counsel should have objected to the prosecutor's alleged improper questioning of jurors during voir dire, he failed to object to the cocaine that was admitted into evidence, and that he should have argued additional mitigating circumstances at sentencing that were apparent in the record.

To prevail on an ineffective assistance of counsel claim, we note that the defendant must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. Id. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." Id. In other words, the standard asks whether, "considering all the circumstances," counsel's actions were "reasonable[] under prevailing professional norms." Id. at 688.

8

Second, a defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. Id. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id.

We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002). Additionally, counsel is to be afforded considerable discretion in the choice of strategy and tactics. Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. Id. In other words, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. Autrey v. State, 700 N.E.2d 1140, 1141 (Ind. 1998).

A. Questioning During Voir Dire

As for Hardy's claim regarding juror questioning during voir dire, we note that proper examination during voir dire may include questions designed to disclose the jurors' attitudes towards the offense charged and to uncover preconceived ideas about

9

defenses that the defendant intends to use. Steelman v. State, 602 N.E.2d 152, 158 (Ind. Ct. App. 1992). In making these determinations, the parties may pose hypothetical questions, provided they do not suggest prejudicial evidence that was not adduced at trial. Id. The function of voir dire examination is to ascertain whether jurors can render a fair and impartial verdict in accordance with the law and evidence. Coy v. State, 720 N.E.2d 370, 372 (Ind. 1992).

In this case, it is apparent that the prosecutor was attempting to elicit the jurors' preconceived notions about drug dealing and specifically about how jurors viewed the use of confidential informants by police. Tr. p. 157-60. In other words, the prosecutor was attempting to ascertain if any jurors had any biases against the use of confidential informants. See Hopkins v. State, 429 N.E.2d 631, 634 (Ind. 1981) (holding that there is nothing wrong with inquiring into jurors' minds about their biases in regard to the credibility of witnesses with an eye toward removing prospective jurors predisposed to disbelieve those with certain characteristics). Likewise, Hardy has failed to establish that counsel was ineffective for failing to object to the prosecutor's references to the war on drugs. Schnitz v. State, 650 N.E.2d 717, 723 (Ind. Ct. App. 1995).

### B. Admission of Cocaine at Trial

Hardy next claims that his trial counsel was ineffective for failing to object to the admission into evidence of the cocaine that the C.I. had purchased. Hardy contends that an objection should have been made because there was one reference made that the exhibit was from "219 W. Powers" street, instead of "719 West Powers." Appellant's Br.

10

p. 24. However, it is apparent to us that trial counsel did not object because he knew this was simply a misstatement, because the remaining evidence established that the investigation was focused on 719 W. Powers and that was where the C.I. had obtained the cocaine. Tr. p. 284-90. As a result, Hardy has failed to show that his trial counsel was ineffective on this basis.

## C. Mitigating Factors

Hardy's final claim of ineffective assistance of counsel is that his trial counsel should have argued at sentencing that the following were mitigating factors: (1) Hardy was only thirty-five years old; (2) Hardy had nearly completed a two-year degree in culinary arts prior to his arrest; and (3) Hardy behaved well while he was in jail between the time of arrest and sentencing.

We note that the determination of mitigating circumstances is within the trial court's discretion. Rogers v. State, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007). The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. Id. A trial court does not err in failing to find a mitigating factor where that claim is highly disputable in nature, weight, or significance. Id. An allegation that a trial court abused its discretion by failing to identify or find a mitigating factor requires the defendant on appeal to establish that the mitigating evidence is significant and clearly supported by the record. Id.

11

In <u>Corcoran v. State</u>, 774 N.E.2d 495, 500 (Ind. 2002), our Supreme Court determined that a defendant, who was twenty-two years old, was "well past the age of sixteen where the law requires special treatment." Also, in <u>Monegan v. State</u>, 756 N.E.2d 499, 504 (Ind. 2001), it was held that age is neither a statutory nor a per se mitigating factor. And the <u>Corcoran</u> court also held that the trial court properly rejected a proffered mitigator that the defendant behaved well in jail prior to sentencing, because good behavior is expected from those who are incarcerated. Finally, we note that this court determined in <u>Benefield v. State</u>, 904 N.E.2d 239, 248 (Ind. Ct. App. 2009), <u>trans. denied</u>, that a trial court is not obligated to find that the defendant's participation in higher education is a mitigating factor.

Under these circumstances, Hardy has failed to rebut the presumption that his trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. <u>Pruitt v. State</u>, 903 N.E.2d 899, 906 (Ind. 2009). As a result, Hardy does prevail on his ineffective assistance of counsel claim.

### III. Sufficiency of the Evidence

Hardy next argues that his convictions must be set aside because the evidence was insufficient. Hardy contends that the State failed to demonstrate that he was on the property when the C.I. was present and there was no evidence that Hardy delivered the cocaine. Hardy also argues that the conviction for maintaining a common nuisance must be set aside because the State did not show that he "controlled" the property when the transaction took place. Appellant's Br. p. 29.

12

In resolving Hardy's challenges to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Rather, we respect "the jury's exclusive province to weigh conflicting evidence." McHenry v. State, 820 N.E.2d 124, 126-27 (Ind. 2005). We consider only the probative evidence and reasonable inferences therefrom that support the verdict. Id. We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007).

We also note that a conviction may be based entirely on circumstantial evidence. Franklin v. State, 715 N.E.2d 1237, 1241 (Ind. 1999). The circumstantial evidence need not overcome every reasonable hypothesis of innocence. Rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. Kriner v. State, 699 N.E.2d 659, 663 (Ind. 1998).

## A. Dealing in Cocaine

To convict Hardy of dealing in cocaine as a class A felony, the State had to prove that Hardy "knowingly or intentionally delivered cocaine." I.C. § 35-48-4-1(a)(1). The evidence demonstrates that the C.I. went to Hardy and Taylor's house to purchase cocaine. Tr. p. 358. Hardy called Taylor and asked how much "dope" should be given to the buyer. Tr. p. 358. The C.I. returned to Officer Elam's vehicle a short time later, carrying a piece of torn plastic that contained an off-white, rock-like substance, which tested positive for cocaine. Id. at 285, 289, 318-19. When Hardy was arrested several hours later, he was in possession of several bills that the police had given to the C.I. to

13

purchase cocaine. This was sufficient evidence to support Hardy's conviction for dealing in cocaine.

### B. Maintaining Common Nuisance

To convict Hardy of this offense, the State had to prove that Hardy knowingly maintained the residence located at 719 West Powers Street that was used one or more times for manufacturing, keeping, offering for sale, selling, delivering or financing the delivery of cocaine. I.C. § 35-48-4-13(b)(2). To be convicted of this offense, a defendant need not own or legally possess the building or structure. Jones v. State, 807 N.E.2d 58, 66-67 (Ind. Ct. App. 2004). And a defendant's possessory interest in the premises does not require actual ownership. Id.

In this case, the evidence showed that Taylor and Hardy moved into the residence on 719 West Powers Street in Muncie, sometime between December 2006 and January 2007. Tr. p. 353-55, 280-81. Taylor and Hardy were friends and business partners in a cocaine-selling enterprise, and Hardy's name was on the lease. The evidence also established that Taylor and Hardy shared "clients" throughout their partnership. Id. at 379.

When the police searched the residence, one scale was in the top drawer of the dresser, another was in a laundry basket, and marijuana was in the living room and the bedroom that Taylor and Hardy shared. Tr. p. 363-64. The scale found in the bedroom was used to weigh cocaine. And both Hardy and Taylor used this scale.

14

Based on the foregoing, the jury could reasonably find that Hardy had maintained the residence for dealing in cocaine. See Jones, 807 N.E.2d at 67 (holding that evidence that the defendant had constructive possession of cocaine found in the residence was sufficient to prove that the defendant maintained the residence). As a result, we conclude that the evidence was sufficient to support Hardy's conviction for maintaining a common nuisance.

## IV.  Sentencing

Hardy next attacks a portion of the trial court's sentencing order. Specifically, Hardy maintains that the order improperly designates the amount of time that he is to serve on his sentence for a prior conviction for which he was on probation at the time the instance offenses were alleged to have occurred.

During Hardy's sentencing hearing, the trial court had to determine how much suspended time that he had to serve under the prior cause. Tr. p. 473. The trial court determined that Hardy had seventeen months of suspended time, for which he was on probation at the time of his arrest. Tr. p. 473-74. The trial court ordered Hardy to serve the seventeen months consecutive to the sentence that was imposed in this case.

However, we note that that Abstract of Judgment indicates that Hardy is to serve seventeen years under the prior cause consecutive to the sentence imposed in the instant case. That said, it is apparent that the designation of seventeen years set forth in the abstract of judgment amounts to a scrivener's error. To avoid future confusion with regard to this issue, we elect to remand this cause to the trial court with instructions to

15

correct the abstract of judgment to reflect a time period of seventeen <u>months</u> that was originally ordered.

The judgment of the trial court is affirmed and remanded.

KIRSCH, J., and BROWN, J., concur.