**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 20 2014, 6:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID HEDGECRAFT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A05-1303-CR-141 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1204-FD-733

**February 20, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, David V. Hedgecraft (Hedgecraft), appeals his conviction for maintaining a common nuisance, a Class D felony, Ind. Code § 35–48-4-13, and dealing in methamphetamine, a Class B felony, I.C. § 35–48-4-1.1.

We affirm.

## ISSUE

Hedgecraft raises three issues on appeal which we state as follows:

1. Whether there was sufficient evidence to sustain Hedgecraft's conviction for dealing in methamphetamine;

2. Whether the trial court properly sentenced Hedgecraft; and

3. Whether the jury reached an inconsistent verdict.

## FACTS AND PROCEDURAL HISTORY

On April 17, 2012, Madison County Sherriff's Deputy Brad Oster (Deputy Oster) responded to an anonymous tip regarding the manufacturing of methamphetamine in Hedgecraft's garage located at 288 East 1100 North, Alexandria, Madison County, Indiana. Deputy Oster and two other Officers went to the residence to conduct a "stop and knock." (Transcript p. 148). Hedgecraft's daughter opened the door and told the Officers her father was not at home. Shortly thereafter, Hedgecraft arrived finding the Officers outside his house. Hedgecraft appeared jittery and shaky, but he consented to a search of his garage. Hegdecraft's garage was a two-and-one half car garage with two separate areas inside. The

first room was a former apartment that contained some workout equipment and was partly furnished. The other room was a typical garage. The two rooms were separated by a wall with an entry door. The entry door to the garage was secured with a deadbolt and the door frame had been reinforced. When the Officers entered the garage, they detected a strong chemical odor unique to methamphetamine laboratories. The odor was so strong the Officers asked Hedgcraft to open the overhead garage door so as to ventilate the garage. Despite the fact that there was no evidence of methamphetamine in Hedgecraft's garage, the Officers found several items used in the manufacture of methamphetamine including; a partially burned plastic bottle, lithium battery casing strips, a bottle converted into a HCL generator, two cans of Coleman fuel, two vinyl tubing, a blender that contained a white residue and one pot in the trash. The materials that the Officers found inside the garage indicated that the "[b]irch [r]eduction [m]ethod" for manufacturing methamphetamine, commonly called the "one pot version" had been used. (Tr. p. 213). When the Officers conducted a "drager test" on the partially burned plastic bottle, it tested positive for ammonia. (Tr. p. 220).

On April 18, 2012, based on the evidence discovered during the search, the State filed an Information charging Hedgecraft with Count I, possession of chemical reagents or precursors with intent to manufacture a controlled substance, a Class D felony, I.C. § 35–48-4-14.5; and Count II, maintaining a common nuisance, a Class D felony, I.C. § 35–48-4-3. On September 27, 2012, the State amended the Information and added Count III, dealing in methamphetamine, a Class B felony, I.C. § 35–48-4-1.1. On February 13

through February 14, 2013, a jury trial was conducted. At the close of the evidence, the jury found Hedgecraft guilty as charged on Count II and III but was hung on Count I. On February 25, 2013,the State dismissed Count I and the trial court sentenced Hedgecraft to three years on Count II and twenty years on Count III, all to run concurrently.

Hedgecraft now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I.     *Sufficiency of the Evidence*

Hedgecraft contends that the State did not provide sufficient evidence to support his conviction for dealing in methamphetamine.

In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212–13 (Ind. Ct. App. 2007), *trans. denied*. We will consider only the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id*. at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id*.

Hedgecraft maintains that because he did not have dominion over his garage, he did not constructively possess the items that were discovered in the garage and were used to manufacture methamphetamine. Specifically he argues that the garage had been broken into several times, and was not secure. Additionally, he also alleges that when his son was

4

arrested and convicted for manufacturing methamphetamine from his garage, the Drug Task Force confiscated most of the items and left some items behind.

In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband, which may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband. *Id.* (*quoting Taylor v. State*, 482 N.E.2d 259, 261 (Ind. 1985)). Such additional circumstances include, but are not limited to, the following: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) location of substances like drugs in settings that suggest manufacturing; (4) proximity of the contraband to the defendant; (5) location of the contraband within the defendant's plain view; and (6) the mingling of the contraband with other items owned by the defendant. *Macklin v. State,* 701 N.E.2d 1247, 1251 (Ind. Ct. App. 1998).

Even if we assume other people had access to Hedgecraft's garage, an assumption that was not supported by the actual evidence, the additional circumstances presented at trial support the inference that Hedgecraft intended to maintain dominion and control over his garage, and that he had actual knowledge of the garage's illegal character. First, when Hedgrecraft met the officers at his home, he was jittery. Also, when the Officers entered Hedgecraft's garage, they were met with a strong odor, a smell obvious to them that the

garage had been used as a methamphetamine lab. Moreover, when the officers searched the garage, they found items commonly used in the production of methamphetamine in plain view.

To prove the capability prong, the State had to show that Hedgecraft had "the power, by way of legal authority, or in a practical sense, to control the place where, or the item in which, the substance is found." *Jones v. State,* 807 N.E.2d 58, 65 (Ind. Ct. App. 2004). Here, the record reveals that only Hedgecraft and his son had keys to the garage. Hedgecraft's son, who was in prison, had lost his keys, and this only meant that by process of elimination, Hedgecraft was the only one who had access to the garage. The record further reveals that the garage door had a deadbolt and was strapped shut, and the overhead garage door opener had been disabled. For these reasons, we conclude that Hedgecraft constructively possessed the items found in the garage.

II.    *Sentencing*

We have held that, "[a]s long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007), *aff'd on reh'g,* 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* One way in which a trial court may abuse its discretion is by failing to enter a sentencing statement at all. *Id.* Another example includes entering a sentencing statement that explains reasons for imposing a sentence, including aggravating and mitigating factors, which are not supported by the record. *Id.* at 490–91.

6

Since the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion by failing to properly weigh such factors. *Id.* at 491. This is so because once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then impose any sentence that is authorized by statute and permitted under the Indiana Constitution. *Id.* This does not mean that criminal defendants have no recourse in challenging sentences they believe are excessive. *Id.* Although a trial court may have acted within its lawful discretion in determining a sentence, Appellate Rule 7(B) provides that the appellate court may revise a sentence authorized by statute if the appellate court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id.* It is on this basis alone that a criminal defendant may now challenge his sentence where the trial court has entered a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing the particular sentence that is supported by the record, and the reasons are not improper as a matter of law. *Id.*

A. *Aggravators*

Hedgecraft argues that the trial court's consideration of his criminal history as a single aggravator was improper. We have held that one aggravating factor can be a sufficient basis to enhance a sentence. *Peoples v. State,* 649 N.E.2d 638, 640 (Ind. Ct. App. 1995). In the instant case, the record reveals that the trial court relied on the pre-sentence report which showed that Hedgecraft had several misdemeanor convictions including criminal conversion, criminal trespass, operating vehicle while intoxicated, burglary

resulting in bodily injury, driving while intoxicated and driving while on suspended license. Therefore, we conclude the trial court properly relied on his criminal history as an aggravating factor.

## B. *Inappropriate Sentence*

Hedgecraft next argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender as provided for in Appellate Rule 7(B). We note that the sentence for dealing in methamphetamine, a Class B felony, is a fixed term of between six and twenty years, with the advisory sentence being 10 years. *See* I.C. § 35-50-2-5. Whereas the sentence for maintaining common nuisance, a Class D felony is a fixed term of between six months and three years, with the advisory sentence being one and one-half years. The trial court in this instant case sentenced Hedgecraft to the maximum sentence on both offenses.

Here, Hedgecraft attempts to discount the seriousness of the nature of his offenses by claiming he did not any way harm his neighbors. While no evidence was presented at trial showing Hedgecraft lived in a populated neighborhood thus posing a danger to his neighbors, we have reason to believe that as a matter of fact it did. The record shows that the Officers responded an anonymous tip, therefore a reasonable inference can be made that a concerned neighbor had been affected by Hedgecraft's manufacturing of methamphetamine. Moreover, at trial, the Officers testified that even though they did not find actual methamphetamine, they were certain that the manufacturing process of methamphetamine had taken place at Hedgecraft's garage.

8

On review of the Hedgecraft's character, the record reveals that he had been convicted of several misdemeanor convictions and he admitted to being addicted to drugs. Based on the foregoing, we cannot say that Hedgecraft's sentence is inappropriate based on the nature of the offense and his character.

### III.    *Inconsistent Verdict*

Hedgecraft lastly contends that his conviction for Count III, dealing in methamphetamine must be vacated because the jury did not convict him of Count I, possession of chemical reagents or precursor with intent to manufacture. He argues that it is impossible to convict him of manufacturing methamphetamine without first possessing the chemical precursors of methamphetamine.

We note that, both offenses have different elements. I.C. § 35–48–4–2(a)(1)(A) provides that a person who knowingly or intentionally manufactures a schedule II controlled substance, which includes methamphetamine, commits a Class B felony. Whereas, a person who possesses two or more chemical reagents or precursors with the intent to manufacture methamphetamine commits a Class D felony. *See* I.C. § 35–48–4–14.5(b). We have recognized that:

> [t]he sole practical difference between these two offenses is that one may be guilty of possessing the chemical precursors with intent to manufacture without actually beginning the manufacturing process, whereas the manufacturing process must, at the very least, have been started by a defendant in order to be found guilty of manufacturing methamphetamine.

*Scott v. State.* 803 N.E.2d 1231, 1239 (Ind. Ct. App. 2004).

Here, because the jury was hung on Count I they could not determine whether Hedgecraft was guilty of possessing chemical precursors of methamphetamine.

9

Nevertheless, the jury found that the State had proved beyond reasonable doubt that Hedgecraft had knowingly or intentionally manufactured methamphetamine from his garage. The evidence presented at trial indicates that Hedgecraft had previously manufactured methamphetamine in his garage. The record shows that when the Officers searched Hedgecraft's garage, they detected a very strong chemical odor indicating that the garage was as a methamphetamine laboratory. Also, they found equipment used in the production of methamphetamine including a bottle converted into a HCL generator, two cans of Coleman fuel, two vinyl tubing, a blender that contained a white residue and one pot in the trash. At trial, the Officers testified that even though they did not find actual methamphetamine, they were certain that the manufacturing process of methamphetamine had started and had recently been completed at Hedgecraft's garage. (Tr. p. 234). The evidence presented at trial reasonably leads to the conclusion that actual methamphetamine had been created in Hedgecraft's garage. Under these particular circumstances, we cannot say that because the jury was hung on Count I, it would be proper to vacate Hedgecraft's conviction on Count III.

We therefore conclude that these two offenses, having separate elements, are independent in nature, and must be proved separately. In this regard, we find that the State presented sufficient evidence at trial, to permit a reasonable conclusion that Hedgecraft knowingly and intentionally manufactured methamphetamine in his garage. For this reason, we find that Hedgecraft's conviction for dealing in methamphetamine need not be vacated.

CONCLUSION

Based on the foregoing, we conclude that, 1) there was sufficient evidence to support Hedgecraft's conviction for dealing in methamphetamine; 2) the trial court properly sentence Hedgecraft; and 3) Hedgecraft's conviction for dealing in methamphetamine need not be vacated since the State proved the charge beyond a reasonable doubt, Hedgecraft committed the offense.

Affirmed.

VAIDIK, C.J. and MAY, J. concur