# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 20 2019, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEY FOR APPELLANT**

Robert G. Bottorff II
Bob Bottorff Law PC
Jeffersonville, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kelly L. Gillespie, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | February 20, 2019 <br><br> Court of Appeals Case No. 18A-CR-1542 <br><br> Appeal from the Orange Circuit Court <br><br> The Honorable Steven L. Owen, Judge <br><br> Trial Court Cause No. 59C01-1703-F4-356 |

**Baker, Judge.**

[1] Kelly Gillespie appeals his convictions for Level 4 Felony Dealing in Methamphetamine[1] and Level 6 Felony Maintaining a Common Nuisance,[2] arguing that (1) the evidence was insufficient to support the convictions; (2) the convictions violate the prohibition against double jeopardy; (3) the trial court erred when it refused to consider certain mitigating factors; and (4) the sentence was inappropriate in light of the nature of the offenses and his character. Finding that the evidence was sufficient, that there was no violation and no error, and that the sentence was not inappropriate, we affirm.

# Facts

[2] For approximately three to four years, Gillespie and Karen Cornwell have been in an on-again, off-again relationship. On March 21, 2017, Detective Paul Andry of the Orange County Sheriff's Department executed an arrest warrant for an unrelated offense for Cornwell at her home. Upon arriving, Detective Andry found a red pick-up truck with stolen plates and a white Ford F-150 pick-up truck in the driveway. Detective Andry called for back-up, and after Sheriff's Deputy Jonathan Deaton arrived, they approached the front door and knocked. Gillespie answered the door, and Detective Andry asked Gillespie where

---

[1] Ind. Code §§ 35-48-4-1.1(a)(2)(A), -1.1(c)(2).

[2] Ind. Code §§ 35-45-1-5(a)(3), -5(c).

Cornwell was. Gillespie responded that she was inside. While Gillespie waited outside with Deputy Deaton, Detective Andry entered the home.

[3] Detective Andry saw Cornwell standing in the living room. She attempted to escape through the dining room, but after Detective Andry cornered her and drew his weapon, Cornwell surrendered. Detective Andry handcuffed her and escorted her out of the residence. While inside, Detective Andry noticed that the house smelled strongly of marijuana.

[4] Cornwell mentioned that there was medication she needed inside of her red pick-up truck. Detective Andry went to retrieve the medication, and in his search, he discovered "a glass pipe with white residue[.]" Tr. Vol. II p. 151. The white substance was later determined to be methamphetamine. After reading Cornwell her *Miranda*[3] rights, Detective Andry asked Cornwell what else was inside the residence. Cornwell admitted that marijuana, several pipes, and other drug paraphernalia were inside the house.

[5] Detective Andry and Deputy Deaton arrested both Cornwell and Gillespie. Gillespie became agitated, questioning why he was being arrested. Though Gillespie claimed he did not live with Cornwell, Cornwell said that Gillespie sometimes lived at her home and sometimes at his own home in Mitchell, Indiana.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] The officers obtained and executed a search warrant on Cornwell's property later that afternoon. Detective Andry used a K-9 officer to help with his search, and because the property was so saturated with illegal substances, the dog alerted almost immediately. In Cornwell's red truck, they discovered rolling paper, a glass pipe, and a small baggie that appeared to be used for packaging drugs. They also found a pipe with marijuana residue, butane canisters, a digital scale with a substance that was later determined to be methamphetamine, additional baggies, and a court document with Gillespie's name on it. In Gillespie's white truck, they discovered a metal plate with methamphetamine residue, a tube from an ink pen, a pipe, a loaded .45 revolver, and several small, square baggies with a yellow spider pattern on them.

[7] Next, the officers searched Cornwell's home. Detective Andry described the scene as "[p]retty much in disarray." *Id*. at 179. It was very dark, and items were scattered throughout the living room. They found multiple methamphetamine pipes in plain view; a box that contained a marijuana grinder, a small plastic baggie, and another methamphetamine pipe; and Cornwell's brown purse with pills inside. There was a floral-print purse on the sofa that contained a small baggie of marijuana, other plastic baggies, a $20 bill with an "eight-ball" logo commonly used for drugs, and two bags filled with a substance later determined to be methamphetamine. Then, in the dining room, they found a "dealing kit" on the table that included a wooden cigar box with small baggies, a spoon, and digital scales. *Id*. at 182-83. These baggies had the same yellow spider pattern as the one on the baggies found in Gillespie's truck

and contained a white crystal-like powder that was later determined to be methamphetamine.

[8] Finally, the officers searched the bedroom, where they found men's and women's clothing strewn throughout the room. They found a jar containing marijuana buds inside a box, an AR-15 model assault rifle, another loaded rifle, and a surveillance camera that had been stolen.

[9] On March 23, 2017, the State charged Gillespie with one count of Level 4 felony dealing in methamphetamine, one count of Level 5 felony possession of methamphetamine, one count of Level 6 felony maintaining a common nuisance, and one count of Class B misdemeanor possession of marijuana. Following a three-day jury trial, on May 17, 2018, the jury found Gillespie guilty as charged.

[10] At the sentencing hearing on May 30, 2018, Gillespie proffered three possible mitigating factors: (1) no criminal history; (2) his likelihood of responding positively to probation or short-term imprisonment; and (3) his low likelihood of reoffending. The trial court noted that Gillespie did have a prior criminal record involving alcohol-related charges that resulted in sentences for operating a vehicle while intoxicated, public intoxication, and illegal consumption of an alcoholic beverage. Appellant's App. Vol II p. 40. The trial court refused to consider these three factors to be mitigating. The trial court sentenced him to consecutive terms of twelve years for the dealing in methamphetamine conviction, two and one-half years for the maintaining a common nuisance

conviction, and 180 days for the misdemeanor possession of marijuana conviction for an aggregate sentence of fifteen years. The trial court vacated the felony possession of marijuana conviction for double jeopardy purposes. Gillespie now appeals.

# Discussion and Decision

# I. Sufficiency of Evidence

[11] First, Gillespie argues that the evidence was not sufficient to support the dealing in methamphetamine and the maintaining a common nuisance convictions.[4]

[12] When reviewing the sufficiency of the evidence supporting a conviction, we must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). It is not our job to reweigh the evidence or to judge the credibility of the witnesses, and we consider any conflicting evidence most favorably to the trial court's ruling. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005).

---

[4] Gillespie is not appealing his possession of marijuana conviction.

# A. Dealing in Methamphetamine

[13] To convict Gillespie of dealing in methamphetamine, the State was required to prove beyond a reasonable doubt that Gillespie (1) possessed (2) with the intent to deliver (3) methamphetamine, pure or adulterated, (4) that was less than one gram in weight (5) and an enhancing circumstance applies. I.C. §§ 35-48-4-1.1(a)(2)(A), -1.1(c)(2). The jury determined that Gillespie's commission of the offense while in possession of a firearm was an applicable enhancing circumstance. *See* I.C. § 35-48-1-16.5(2).

[14] First, there is no dispute about the third, fourth, and fifth elements. The officers found methamphetamine that weighed less than one gram in weight. Also, Gillespie had constructive possession of the firearm because he kept a gun in his truck. *Grim v. State*, 797 N.E.2d 825, 831 (Ind. Ct. App. 2003) (holding that an individual has constructive possession of a firearm when he has the intent and capability to maintain dominion and control over the firearm). Since Gillespie had exclusive possession of the white truck in which the firearm was found, the reasonable inference is that Gillespie had knowledge of the firearm's presence and could reduce it to his personal possession at any point. *Woods v. State*, 471 N.E.2d 691, 694 (Ind. 1984) (finding that "undisputed control" over one's own vehicle can be enough to establish exclusive dominion over a firearm found therein).

[15] Regarding the possession element, "a conviction for possession of contraband may rest upon proof of either actual or constructive possession." *Macklin v.*

*State*, 701 N.E.2d 1247, 1252 (Ind. Ct. App. 1998). Constructive possession involves actual knowledge of the presence of the contraband along with the intent and capability to maintain dominion and control over it. *Washington v. State*, 902 N.E.2d 280, 288 (Ind. Ct. App. 2009).

[16]    Furthermore:

> In cases where the defendant has exclusive possession over the premises on which the contraband is found, an inference is permitted that the defendant knew of its presence and was capable of controlling it. When possession is non-exclusive, however, additional circumstances must be present to support the inference that the defendant intended to maintain dominion and control over the contraband and that the defendant had actual knowledge of its presence and illegal character. Such additional circumstances include, but are not limited to, the following: (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Id.* (internal citations omitted).

[17]    The record shows that at least some of the time, Gillespie lived with Cornwell at her house. Despite Gillespie's statement to the contrary, a reasonable trier of fact could conclude that they cohabitated in the same space given the presence of men's clothing in the bedroom, the romantic relationship between the two, the fact that Gillespie answered the door when Detective Andry knocked, Cornwell's admission that Gillespie lived there part-time, and the fact that Gillespie parked his truck in the driveway next to Cornwell's.

[18]     However, because Gillespie has non-exclusive possession of the premises, we must look for additional circumstances. In his search of the living room, Detective Andry found, in plain view, multiple meth pipes, individual baggies, marijuana grinders, pills, money used for selling the drugs, and other substances that a reasonable trier of fact could conclude would easily come under Gillespie's personal control. Inside Gillespie's truck, the officers discovered a metal plate with residue that was later determined to be methamphetamine, a tube from an ink pen, a pipe, a loaded .45 revolver, and several small, square baggies with a yellow spider pattern on them. *See, e.g., Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999) (reiterating that mingling of contraband with defendant's own possessions implies control).

[19]     A reasonable trier of fact could conclude that Gillespie—given his proximity to these items, his relationship with Cornwell, the fact that he lived part-time in Cornwell's house, the fact that the drug paraphernalia found in the house closely resembled the drug paraphernalia found in his truck, and the location of the drug paraphernalia in plain view of where Gillespie was located before the arrest—had constructive possession of the methamphetamine.

[20]     Finally, as to the "intent to deliver" element, we have already established that a reasonable trier of fact could conclude that Gillespie had constructive possession over the drug paraphernalia both in the home and in his truck. As such, the jury could have also used that evidence to conclude that Gillespie intended to sell the methamphetamine. *McGuire v. State*, 613 N.E.2d 861, 864 (Ind. Ct. App. 1993) (holding that "[c]ircumstantial evidence of intent to

deliver, such as possession of a large quantity of drugs, large amounts of currency, scales, plastic bags, and other paraphernalia . . . can support a conviction").

[21] The officers discovered plastic baggies both inside Gillespie's truck and inside the home with the same yellow spider label. Additionally, the fact that the drugs were packaged and stored in individual baggies could allow a reasonable trier of fact to infer that these drugs were for sale and not just for personal consumption. Moreover, the presence of the rolling paper, the digital scales, the multiple pipes, and the dealing kit all could imply that Gillespie intended to deliver these drugs outside the home. In sum, the evidence is sufficient to support his conviction for dealing in methamphetamine.

# B. Maintaining a Common Nuisance

[22] To convict Gillespie of maintaining a common nuisance, the State was required to prove beyond a reasonable doubt that Gillespie (1) knowingly or intentionally (2) maintained (3) a common nuisance, which is defined as "a building, structure, vehicle, or other place" that is used for the unlawful manufacturing or keeping of a controlled substance or an item of drug paraphernalia. I.C. §§ 35-45-1-5(a)(3), -5(c).

[23] As to the first and second elements, we have already established that Gillespie did not own the home in which the officers discovered the drug paraphernalia. However, maintenance does not require legal ownership. *Jones v. State*, 807 N.E.2d 58, 66 (Ind. Ct. App. 2004). The defendant must simply exert control

over the premises. *Id*. A reasonable trier of fact could conclude that Gillespie exerted control over the premises where the drug paraphernalia was found because Cornwell testified that he lived there, Gillespie answered the door when the officers knocked, Gillespie parked his car in the driveway, and the officers found male clothing in Cornwell's bedroom. Therefore, one could reasonably conclude that Gillespie knowingly or intentionally maintained the premises.

[24] As to the third element, there is ample evidence in the record to show that this home could be deemed a common nuisance used for the unlawful manufacturing or keeping of a controlled substance. When Detective Andry approached the home with the canine officer, the dog detected the presence of drugs even before entering the home. When inside, Detective Andry said the house smelled strongly of marijuana and noticed methamphetamine pipes and small baggies in plain view. The officers also discovered significant amounts of drug paraphernalia and controlled substances in the home. They found methamphetamine and marijuana in jars, in the floral-printed purse, and in the wooden box.

[25] As such, a reasonable trier of fact could deduce that there was a controlled substance or item of drug paraphernalia on the premises. Consequently, a reasonable trier of fact could conclude that this was a structure used for keeping a controlled substance. In sum, the evidence is sufficient to support his conviction for maintaining a common nuisance.

# II. Double Jeopardy

[26]     Next, Gillespie argues that the separate convictions for dealing in methamphetamine and maintaining a common nuisance violate the prohibition against double jeopardy. The principle of double jeopardy prohibits the State from punishing a defendant twice for the same offense. *Mehidal v. State*, 623 N.E.2d 428, 434 (Ind. Ct. App. 1993). We review questions of double jeopardy de novo, giving no consideration to the trial court's decision below. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).

[27]     Gillespie argues that there is a reasonable probability the jury relied on the same facts to convict him of dealing in methamphetamine and maintaining a common nuisance. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). We disagree.

[28]     The record and the charging information show that the following evidence supports the dealing in methamphetamine conviction:

- All items found in Gillespie's truck, including the baggies with the yellow spider logo, the firearm, and the tray with the methamphetamine residue;
- Certain items found in Cornwell's home suggestive of dealing, including the scales, the firearms, similar baggies with the same yellow spider logo, measuring devices, and the $20 bill; and
- The methamphetamine itself.

[29]     In contrast, the following evidence supports the maintaining a common nuisance conviction:

- The immediate alert by the K-9 officer outside the home because of the overt presence of drugs;
- The methamphetamine pipes in the home;
- The overpowering odor of marijuana in the living room;
- The marijuana grinder; and
- The marijuana itself, including the baggies and buds found in jars.

[30] Given the large wealth of evidence supporting each conviction separately, we do not find that it is reasonably probable that the jury relied on the same facts to support both convictions. Therefore, we find that there was no double jeopardy violation.

# III. Mitigating Factors

[31] Next, Gillespie argues that the trial court erred when it refused to consider certain mitigating factors.

[32] We will reverse a sentencing decision involving the use or non-use of certain mitigating factors only if the decision is clearly against the logic and effect of the facts and circumstances before the trial court and all reasonable inferences drawn therefrom. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). We note that sentencing decisions are left to the sound discretion of the trial court. *Smallwood v. State*, 773 N.E.2d 259, 263 (Ind. 2002).

[33] Specifically, with regards to mitigating factors, the trial court is under no obligation to find and/or use mitigating factors in its sentencing analysis. *Wingett v. State*, 640 N.E.2d 372, 373 (Ind. 1994). In fact, the burden is on the defendant to establish that a proffered mitigating factor is both significant and

"clearly supported by the record," *Anglemyer*, 868 N.E.2d at 493, if he alleges that the trial court failed to identify a mitigating circumstance.

[34] Gillespie claims that the trial court erred by not considering three potential mitigating factors: (1) no criminal history; (2) his likelihood of responding positively to probation or short-term imprisonment; and (3) his low likelihood of reoffending.

[35] Simply put, we find Gillespie's argument unavailing. First and foremost, the trial court did consider Gillespie's proffered factors but simply refused to find them as mitigating in its sentencing decision. The trial court explained its reasoning as follows:

> The mitigating circumstances . . . that you committed some offenses a long time ago, but that you've led basically a law abiding life. I don't know if I can go that far. Is your criminal history the worst I've ever seen? Certainly not. Is it the best I've ever seen? Certainly not, okay? You have a fairly average criminal history in my opinion and it is certainly mostly misdemeanors, it's all misdemeanors, except here recently. . . . So I will say that you do have a criminal history, but I'll attach moderate weight to it.
>
> ***
>
> [Y]ou went out and you committed a new offense, you bonded out, you committed another offense, you bonded out, you committed another offense so the revolving door of the criminal activity, that's very disturbing with the Court and so the Court will assess great weight to that fact and that's a violation and as an aggravating factor pursuant to 35-38-1-7.1(6). So the Court would find that in addition to the 35-38-1-7.1(2) that you do have a prior criminal history. When I look at the mitigating circumstances I really didn't have a lot that was presented, that I could find. Do I think you'll reoffend? I think that you probably would if I had released you again. You'd probably be in trouble again. So, um, I

really don't find any mitigating circumstances in this case and I believe that the aggravating circumstances far outweigh the mitigating circumstances[.]

Tr. Vol. III p. 82-84.

[36] Here, the trial court acknowledged that Gillespie did not have the worst criminal history but emphasized that it was a criminal history nonetheless. And despite Gillespie's claims that he would benefit from short-term rehabilitation or incarceration, the trial court determined that Gillespie was actually at a high risk for reoffending given his "revolving door of criminal activity." *Id.* at 84. Rather than point to evidence in the record that clearly supports his claim that these factors should be mitigators and are significant, Gillespie simply argues that the trial court made a mistake and focused too heavily on his criminal record and substance addiction in making its sentencing decision. But the record reflects a long history of trouble with the law, Gillespie's failure to reform his ways, and a willingness to continue misbehaving in direct defiance of the law. Despite Gillespie's claims that he is non-violent and will not likely reoffend, the trial court reasoned otherwise and reached a sound decision at sentencing. Therefore, the trial court did not err in refusing to consider Gillespie's proffered factors to be mitigating.

# IV. Appropriateness

[37] Finally, Gillespie argues that the sentence was inappropriate in light of the nature of the offenses and his character.

[38]     Indiana Appellate Rule 7(B) states that a "Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). In determining whether a sentence is inappropriate, we will consider numerous factors such as culpability of the defendant, the severity of the crime, the damage done to others, and a "myriad of other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008).

[39]     The maximum sentence for a Level 4 felony conviction is twelve years and the minimum sentence is two years. Ind. Code § 35-50-2-5.5. The advisory sentence is six years. *Id*. Here, the trial court imposed the maximum twelve-year sentence. The maximum sentence for a Level 6 felony conviction is two and one-half years and the minimum sentence is sixth months. Ind. Code § 35-50-2-7. The advisory sentence is one year. *Id*. Here, the trial court imposed the maximum two-and-one-half-year sentence.

[40]     First, as to the nature of the offenses, Gillespie committed serious drug crimes. Despite Gillespie's characterization of his actions as "drug addiction[,] . . . not a drug dealing issue," appellant's br. p. 41, the evidence suggests otherwise. The baggies, measuring devices, and multiple methamphetamine pipes demonstrate that Gillespie—along with Cornwell—had actively been selling drugs and endangering the health and safety of those in his community. Moreover, the sheer excess of the drug paraphernalia suggests that Gillespie had participated

in multiple drug transactions, with Cornwell's house as the center of the operation. While Gillespie claims no significant harm resulted from his actions, drug crimes produce deleterious effects to the surrounding community. Therefore, we find that the nature of the offenses does not render the sentence inappropriate.

[41] Second, as to Gillespie's character, Gillespie has a criminal record that includes multiple arrests and convictions. *See Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (holding that "it is appropriate to consider such a [criminal] record as a poor reflection on the defendant's character"). While Gillespie's criminal record is composed primarily of alcohol-related charges and convictions, the sheer number of offenses shows a clear disregard for the rule of law. Furthermore, almost five months after Gillespie was arrested for the violations in this case, Gillespie was arrested again for committing similar drug offenses involving the possession, manufacturing, and selling of marijuana and methamphetamine. Gillespie shows no sign of reform. Therefore, we find that Gillespie's character does not render the sentence inappropriate.

[42] In sum, we will not revise Gillespie's sentence pursuant to Indiana Appellate Rule 7(B).

[43] The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.